[No. 40710.    En Banc.    January 22, 1970.]

JOHN TSAPRALIS et al., *Appellants*, v. PUBLIC EMPLOYEES MUTUAL CASUALTY Co., *Respondent.**

*Carson F. Eller* (of *Griffin, Boyle & Enslow*), for appellants.

*Eisenhower, Carlson, Newlands, Reha & Sinnitt, Paul Sinnitt*, and *Ronald A. Roberts*, for respondent.

HUNTER, C. J.—The plaintiffs (appellants), John Tsapralis and his wife, appeal from a trial court order granting the defendant (respondent), Public Employees Mutual Casualty Company, a motion for a summary judgment, denying recovery under the uninsured motorist provision of the plaintiffs' insurance contract with the defendant.

On November 1, 1963, the plaintiffs were riding in their family automobile when it collided with an automobile

*Reported in 464 P.2d 421.

driven by Mr. Vernon Walter. The plaintiffs allege that they were injured and suffered damages as a result of the accident which was caused by Mr. Walter's negligence. At that time, Mr. Walter carried bodily injury liability insurance with the Midwest Mutual Casualty Company. On November 5, 1965, the Midwest Mutual Casualty Company became insolvent and all insurance policies issued by it were cancelled.

At the time of the accident, the plaintiffs were named insureds under a contract of insurance with the defendant insurance company. That contract provided, among other things, for benefits payable to the insureds for bodily injury suffered by them and caused by uninsured motorists:

> Coverage J, Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile;
> . . .

The plaintiffs' claims against the defendant were premised on that insurance provision. The plaintiffs contend the cancellation by Midwest Mutual Casualty Company of its outstanding insurance policies caused Mr. Vernon Walter to become an uninsured motorist under the terms of their insurance contract with the defendant.

The trial court, deciding otherwise, based its decision on the policy definition of "uninsured" automobiles:

> an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident . . .

For the reasons hereafter stated, we reverse.

■ In considering the insurance contract before us, we interpret it to give effect to the intent of the parties and that intention normally is ascertained largely from the language employed by them. *Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d

984 (1954). But if the language of the policy is reasonably susceptible to more than one interpretation, then we apply that meaning which is most beneficial to the insured. *It may be interpreted in accordance with the way it would be understood by the average man purchasing insurance.* *Ames v. Baker,* 68 Wn.2d 713, 415 P.2d 74 (1966); *Thompson v. Ezzell,* 61 Wn.2d 685, 379 P.2d 983 (1963).

■ Applying those principles to the term "uninsured" automobile as defined in the insurance contract before us, we believe that a reasonable and proper interpretation placed upon it by an insured would lead him to conclude that when the tort-feasor's insurance carrier is unable to pay his valid claim, then there was no insurance "applicable at the time of the accident." An injured party is as much unprotected by a tort-feasor's insurance carrier which becomes insolvent subsequent to the injury as is one injured by a tort-feasor whose insurance carrier became insolvent immediately before the accident. It is not the moment of impact that an insured logically considers of consequence in contracting for protection against an uninsured motorist—rather, it is the ability of the tort-feasor's insurance carrier to respond in damages for a lawful claim that is the realistic and natural concern of the insured. If the tort-feasor's legal inability to pay that lawful claim occurs after the accident, then that legal inability (insolvency here) should be said, on a relation back in time theory, to have existed at the time of the accident.

Under facts similar to those at hand, courts throughout the country have almost without exception allowed an insured to recover under the uninsured motorist provisions of his own insurance policy, or under a statute, which defines an "uninsured" automobile not only as one upon which there is *no* insurance applicable at the time of the accident (as the policy before us does), but which further defines it as one with respect to which there *is* a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder. Those courts hold that the "denial of coverage" provision is reasonably subject to different interpretations

and is therefore construed against the position of the insurance carrier. *Pattani v. Keystone Ins. Co.,* 426 Pa. 332, 231 A.2d 402 (1967); *Stephens v. Allied Mut. Ins. Co.,* 182 Neb. 562, 156 N.W.2d 133 (1968); *State Farm Mut. Auto. Ins. Co. v. Brower,* 204 Va. 887, 134 S.E.2d 277 (1964); *North River Ins. Co. v. Gibson,* 244 S.C. 393, 137 S.E.2d 264 (1964); *Katz v. American Motorists Ins. Co.,* 244 Cal. App. 2d 886, 53 Cal. Rptr. 669 (1966). These cases hold in essence that the post-accident insolvency of the tort-feasor's insurance carrier amounts to a "denial of coverage" even though no claim had been filed by the injured party against that carrier before the insolvency occurred. These cases reach the same result despite the fact that the legal representative of the insolvent carrier's estate has allowed and approved the injured party's claim filed against the estate. *Stephens v. Allied Mut. Ins. Co., supra.* To do so, these courts necessarily hold that the denial of coverage speaks as of the time of the accident. This reasoning applies to the instant case.

For courts to legally relate the "denial of coverage" provision back to the time of the accident and then not relate the subsequent insolvency of the insurer back to the time of the accident is to create a distinction in law where none should exist. If the tort-feasor's insurance carrier cannot respond in damages when a claim is properly presented within the period of time allowed by law, that is just as much an *absence of insurance at the time of the accident* as it was at the time of insolvency. In each instance the insured should be entitled to proceed against his own carrier under uninsured motorist coverage for which he pays an additional premium.

The clause "applicable at the time of the accident" should be construed in light of the general purposes that lie behind uninsured motorist protection. One paying premiums for uninsured motorist insurance expects to be protected and should be protected against the failure of another to respond in damages where the liability of that person exists. This equitable construction is contemplated by RCW 48.01.030:

The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith . . . and practice honesty and *equity in all insurance matters.*

(Italics ours.)

We also take cognizance of the fact that our state legislature has declared the public policy of this state to be:

(1) The term "uninsured motor vehicles" with reference to coverage offered under any insurance policy regulated under this chapter shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.

Laws of 1967, Ex. Ses., ch. 95, § 3, p. 1834. Our holding is consistent with that stated public policy.

The order of the trial court is reversed.

FINLEY, ROSELLINI, HAMILTON, and HALE, JJ., concur.

McGOVERN, J. (dissenting)—I dissent. The only question before us is whether or not uninsured motorist coverage should be extended to the insured plaintiffs who were injured by a tort-feasor whose own liability coverage lapsed as a result of his insurance carrier's insolvency after the date of the accident.

Whether or not plaintiffs are entitled to uninsured motorist coverage must be determined solely from their contract of insurance with the defendant. That contract provides that defendant will pay to insured plaintiffs

all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile . . .

An "uninsured automobile" is then defined in the contract as

an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability

bond or insurance policy applicable at the time of the accident . . .

I agree with the majority when they say that in considering the insurance contract before them, they must interpret it to give effect to the intent of the parties and that such intention normally is ascertained largely from the language employed by the parties. That is exactly what I would do.

The majority here considers the policy definition of an "uninsured automobile", finds it to be an ambiguous term, and then invokes the rule that insurance policy language reasonably susceptible to more than one interpretation shall be interpreted in a manner most beneficial to the insured. I do not argue the validity of that rule. I do, however, say that it has no application to the case at hand.

The language of the policy is clear and free from ambiguity. It defines an uninsured automobile as one upon which there is no bodily injury liability insurance *applicable at the time of the accident*. When the accident which gave rise to this lawsuit occurred, the tort-feasor carried liability insurance with the Midwest Mutual Casualty Company, a then solvent, operating company. No subsequent event, be it insolvency, bankruptcy or otherwise, could alter the fact that the tort-feasor carried liability insurance at the critical time, *i.e.,* at the time of the accident. That being so, the uninsured motorist provision in his own insurance policy was not applicable to the accident.

My examination of decisions from other jurisdictions fails to disclose a single holding that agrees with the decision reached by the majority in this case. For decisions in harmony with this dissent, *see Dreher v. The Aetna Cas. & Sur. Co.,* 83 Ill. App. 2d 141, 226 N.E.2d 287 (1967); *Michigan Mut. Liab. Co. v. Pokerwinski,* 8 Mich. App. 475, 154 N.W.2d 609 (1967); *Apotas v. Allstate Ins. Co.,* 246 A.2d 923 (Del. 1968).

For the reasons stated, I would affirm.

NEILL, J., and DONWORTH, J. Pro Tem., concur with McGOVERN, J.

---

April 6, 1970. Petition for rehearing denied.