80 Wn.2d 38 (1971)
491 P.2d 641
WEST AMERICAN INSURANCE COMPANY, Respondent,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner.
No. 41942.
The Supreme Court of Washington, En Banc.
December 9, 1971.
SHARP, J.
This appeal arises out of a dispute as to liability coverage between two insurance companies  plaintiff West American Insurance Company (hereinafter called West American), and defendant State Farm Mutual Automobile Insurance Company (hereinafter called State Farm). The trial court, construing two exclusionary provisions of an automobile liability policy issued by State Farm to its insured, Jennie Perry, dismissed the complaint at the conclusion of West American's case. The Court of Appeals reversed the trial court, and this court granted review.
Facts pertinent to the issue before us are set forth in the trial court's findings of fact 1 to 10, reading as follows:
Finding of fact 1:
West American Insurance Company is an insurance company incorporated under the laws of the State of California, and at all times herein mentioned was and is authorized to conduct and is conducting an insurance business in the State of Washington. State Farm Mutual Insurance Company is an insurance company incorporated under the laws of the State of Illinois and at all times herein mentioned was and is authorized to conduct and is conducting an insurance business in the State of Washington.
Finding of fact 2:
West American Insurance Company issued a regular family automobile policy of insurance to Thomas J. Avants on April 20, 1964, expiring one year from date, covering a 1963 Ford.
Finding of fact 3:
State Farm insured Jennie Perry under a public liability policy covering a 1955 Chevrolet two-door sedan as the insured vehicle.
*40 Finding of fact 4:
On or about January 28, 1965 defendant's insured, Jennie Perry, purchased a 1955 Studebaker sedan from Thomas Avants, her brother-in-law.
Finding of fact 5:
Plaintiff's insured, Thomas Avants, was the owner and proprietor of Avants Auto Rebuild located at 325 22nd Avenue South, Seattle, Washington, and he employed his brother William Carl Avants to work in the shop for him.
Finding of fact 6:
On or about February 4, 1965 plaintiff's insured, Thomas Avants, placed his 1963 Ford in a garage for repair work and borrowed the 1955 Studebaker he had previously sold to his sister-in-law, Jennie Perry.
Finding of fact 7:
On February 5, 1964 William Avants was involved in a pedestrian accident when the vehicle he was operating struck a six year old pedestrian by the name of Wilma Fay Williams at the intersection of 23rd Avenue and Lane Street, Seattle, while the girl was crossing 23rd Avenue in the crosswalk.
Finding of fact 8:
At the time of the accident referred to, William Avants, who was employed by his brother Thomas Avants of Avants Auto Rebuild located at 325 22nd Avenue South, was driving the 1955 Studebaker owned by Jennie Perry, which she loaned to Thomas Avants, to deposit a total of four checks in Thomas Avants' business account which was carried at Seattle-First National Bank, Columbia City Branch, under the name of Avants Auto Rebuild. The deposit consisted of four vouchers, all signed and submitted by customers paying Avants Auto Rebuild for work performed. The checks were signed by the following individuals in the respective amounts: M.C. Boswell for $24.75; Walt Hill for $40.00; Roy Strehlo for $41.39; and Hartford Insurance Company for $1,144.53. Said business account was Thomas Avants' only checking account and was used by him for both business and personal purposes.
Finding of fact 9:
The only purpose of the trip for which William Avants *41 was driving at the time of said accident was to deposit the aforementioned funds in the business account of Avants Auto Rebuild which was carried at Seattle-First National Bank, Columbia City Branch. He was on his way back from making the deposit at the time of the accident.
Finding of fact 10:
State Farm did not receive notice of the accident of February 5, 1965, nor of Jennie Perry's prior acquisition of the 1955 Studebaker involved in the accident, until after thirty days after such acquisition of ownership and delivery, and not before June, 1965.
A lawsuit was commenced on behalf of the minor, Wilma Faye Williams, against Thomas Avants and his wife, and William Avants and his wife. Defense was tendered to State Farm, and on its denial of the tender, the Avants were defended by their own insurer, West American. That case was settled prior to trial, and this lawsuit for reimbursement of the amount paid in settlement followed.
State Farm relied on two provisions of its contract of insurance. The first relates to newly acquired automobiles and calls for notification to the company within 30 days of the delivery of a newly acquired vehicle. The trial court found that State Farm did not receive notice of the acquisition of the Studebaker involved in the accident until after 30 days from delivery. However, in disposing of this appeal, we need to construe only the second provision, a so-called "automobile business" exclusion, which reads as follows:
This insurance does not apply under:
...
coverages A and B [liability and property damage], except as to the named insured, to the owned automobile while used in an automobile business ...
Elsewhere in this policy, automobile business is defined as "the business of selling, repairing, servicing, storing or parking of automobiles". As it is undisputed that Thomas Avants was engaged in an "automobile business" as defined in the policy and that the accident occurred when his employee was returning from the bank after having made a *42 deposit of business receipts in Thomas Avants' account, the only question is whether or not the automobile was being "used in an automobile business" at the time of the accident.
We have had occasion to construe this exclusion in three cases. In the first, McCree v. Jenning, 55 Wn.2d 725, 349 P.2d 1071 (1960), the insured turned his automobile over to one Richard Miller, who was engaged part time in the business of repairing automobiles. After it was repaired, and in preparation for redelivery of this automobile to the insured, a friend of the repairman was involved in an accident while driving the automobile to the gas station. We found the "business purposes" exclusion inapplicable, stating at page 727:
It would appear evident, therefore, that an automobile "used in the automobile business," would be one which was employed for some purpose in connection with that business. For example, a tow truck, an automobile used for demonstration purposes, or a vehicle used for securing or delivering equipment and supplies would be "used in the business." But the Jenning automobile was not turned over to Miller to be used by him for his business purposes. It was simply brought to him to be repaired.
Later, in Northwestern Mut. Ins. Co. v. Great Am. Ins. Co., 66 Wn.2d 762, 404 P.2d 995 (1965), the insured left his car with a gas station operator who, as part of his service, provided pickup and delivery service. While he was returning insured's vehicle after servicing, he was involved in a collision. The owner's insurer defended a reimbursement suit, brought by the operator's insurance carrier, on the basis of the automobile business exclusion. After referring to the above quoted portion of the McCree case, and finding that the exclusion did not apply, we stated, at page 764:
And so, here, the owner of the car, which had been serviced and was being returned to his home, would be quite astonished to learn that his car  all of the time that it was out of his possession  was being used in the automobile business.
[1] Finally, in Western Pac. Ins. Co. v. Farmers Ins. *43 Exch., 69 Wn.2d 11, 416 P.2d 468 (1966), the insured gave his truck to a repairman for repairs. An accident occurred as the repairman was driving the truck back to the shop after picking up certain used parts which he planned to install on the truck. In a lawsuit between his personal insurance carrier and the owner's carrier, we stated, at page 17:
We have construed identical exclusionary clauses in the cases of McCree v. Jenning, 55 Wn.2d 725, 349 P.2d 1071 (1960) and Northwestern Mut. Ins. Co. v. Great Am. Ins. Co., 66 Wn.2d 762, 404 P.2d 995 (1965). In both cases we have pointed out that the word "used" in the pertinent clause relates to a use of the automobile by the repair or service man for his business purposes, as distinguished from his use of it in the course of repairing or servicing it. We are not prepared at this time to erase this distinction.
Thus, from these three cases we have evolved the rule that the word "used" in the clause pertains to use of the automobile by the serviceman for his business purposes, as opposed to his use of it in the course of repairing or servicing it. Applying this rule to the facts in the instant matter, it is clear that Mr. Avants' employee was at the time of the incident in question, using the vehicle in furtherance of Mr. Avants' business.
West American argues that the automobile business exclusion was logically designed to omit coverage for high risk enterprises  towing, demonstrating, etc.  for which higher premium garage owners' liability policies are available. Since no high risk situation unique to the automobile business was involved here, the exclusion should not apply. But the instant exclusion does not discriminate among various uses in automobile business, and we should certainly not undertake to rewrite the clause with our own version of high risk enterprises. We have not, nor has any other jurisdiction to our knowledge, considered the particular hazard involved at the time of the accident as determinative of the question. Obviously, a trip to the bank with the daily proceeds of the business does not present as high a *44 risk as, for example, towing a stranded vehicle. However, the policy in its use of the language "while used in an automobile business", makes no distinction between the two uses. The language used clearly covers both activities.
[2] In determining the intention of the parties to an insurance contract, terms used should be understood in their plain, ordinary and popular sense. Lawrence v. Northwest Cas. Co., 50 Wn.2d 282, 311 P.2d 670 (1957). The rule that contracts of insurance are construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous, and then construing it in favor of the insured. Rew v. Beneficial Standard Life Ins. Co., 41 Wn.2d 577, 250 P.2d 956, 35 A.L.R.2d 891 (1952). A court may not modify clear and unambiguous language in an insurance policy, Tucker v. Bankers Life & Cas. Co., 67 Wn.2d 60, 406 P.2d 628 (1965), or revise the insurance contract under the theory of construing it. Jeffries v. General Cas. Co., 46 Wn.2d 543, 283 P.2d 128 (1955). We hold that the exclusion of coverage applied in this case, and accordingly the trial court's judgment of dismissal is affirmed.
HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.