[No. 42062.    En Banc.    March 2, 1972.]

WILLIAM C. TOUCHETTE, *Respondent*, v. NORTHWESTERN MUTUAL INSURANCE COMPANY, *Appellant*.

*Hugh R. McGough,* for appellant.

*Vaughn E. Evans,* for respondent.

HALE, J.—Is the statute (RCW 48.22.030) relating to uninsured motorist coverage of such overriding consequence as to govern the express terms of an insurance contract? Without determining the precise meaning of the contract's language, we are of the opinion that the declared public policy of the state as set forth in RCW 48.22.030 must be given controlling effect.

Claude and Alice Touchette lived in King County; their regularly employed 22-year-old son, William C. Touchette, lived with them as a member of their household. February 1, 1968, the Touchettes purchased an automobile casualty insurance policy (No. FW 74894) from defendant, Northwestern Mutual Insurance Company. The first page of the contract recited that Claude M. and Alice K. Touchette were the named insureds and described their automobile as "63 Volk 1 Priv Passenger." Also on this first page, the policy stated, "Insurance is afforded only as to the coverage or where applicable to the car and coverage for which a premium charge is indicated." A 1958 Cadillac was subsequently substituted for the Volkswagen.

The policy continues:

A. Bodily Injury $50,000 each person $100,000 each occurrence $92.50

B. Property Damage $10,000 each occurrence $40.50

C. Medical Payments $1,000 each person $14.50

D. Uninsured Motorist Financial Responsibility Limits $3.00

Elsewhere in larger print than the standard clauses were captions declaring the contract to be a "Family Automobile Policy" or "Your Family Auto Policy."

Plaintiff, July 27, 1969, while a member of his parents' household, was driving a 1962 Triumph car, a vehicle not described in his parents' policy of insurance, when his car collided with an automobile being driven by an uninsured motorist. Asserting coverage as a relative and member of his parents' household, plaintiff brought this action against defendant insurance company seeking recovery under the uninsured motorist provision.

In one of those transactions which seem to trail off into thin air but is of little moment here, the Touchettes, in a vague sort of deal at an auto repair shop in early July, got rid of the Cadillac and their son emerged with the Triumph. Although the Cadillac was the named vehicle, its disposition would not, the parties agreed for this appeal, affect the uninsured motorist coverage afforded by the policy. An invoice or receipt recorded the Cadillac transaction as it related to the insurance policy:

> Effective Date 3-10-69 Policy Number FW 74894 Coverage change of cars to 1958 Cad. Addition of Comprehensive Coverage-Premium $25.00; Addition of Uninsured Motorists Premium $2.50

The question before us, therefore, in reviewing a summary judgment, is not whether the Triumph became substituted for the 1958 Cadillac designated in the policy, but rather whether the contract of insurance afforded plaintiff uninsured motorist coverage.

The court granted plaintiff's motion for a summary judgment and held the insurance company liable upon principles of public policy as declared in RCW 48.22.030 requiring uninsured motorist coverage unless specifically rejected by the insured. It ruled as a matter of law that plaintiff, as a relative and member of insureds' household was entitled to the same uninsured motorist coverage as his parents, the

named insureds. In effect, the summary judgment allowed the son the same uninsured motorist protection as his parents even though he and not his parents owned the vehicle he was driving at the time of the accident.

As augmented by RCW 48.22.030, the "Uninsured Motorists Section" upon which recovery was allowed read:

> Coverage B—Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile;  . . .
>
> . . .
>
> "Insured" means:
> (a) the named Insured and any relative;

and, under the Automobile Liability Section, the term "relative" was defined as a "relative of the named Insured who is a resident of the same household."

Defendant insurance company relies principally on an exclusionary subsection of the uninsured motorist section of the policy, which says:

> Exclusions—This policy does not apply under the Uninsured Motorists Section:
> (a) to bodily injury to an Insured while occupying an automobile (other than an insured automobile) owned by the named Insured or a relative, or through being struck by such an automobile;

Defendant contends that, because plaintiff was driving his Triumph, an automobile which was neither described in nor carried a specific premium charge in his parents' insurance policy, the exclusionary language of the above subsection cuts off his entitlement to uninsured motorist coverage. Plaintiff rests his claim, however, not on the Triumph as a replacement vehicle for the Cadillac under the terms of the policy but squarely upon what he asserts to be a binding public policy declared by statute, a public policy

which, he contends, overrides the exclusionary language and has the effect of broadening the uninsured motorist protection so as to cover a relative of the named insureds residing with them even though driving an automobile not specifically described in their insurance policy.

We need not decide whether the terms of the contract alone without reference to the statutorily declared public policy afforded the coverage plaintiff seeks, for we think that the court correctly held that plaintiff was, as a matter of law, entitled to the same coverage as his parents under the uninsured motorist provision of their contract.

RCW 48.22.030 reads:

> On and after January 1, 1968, no new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in RCW 46.29.490, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, *except that the named insured may be given the right to reject such coverage, and except that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.*

(Italics ours.)

Neither of the named insureds had ever requested in writing—as the statute provides—that uninsured motorist coverage not be provided, nor had they ever rejected such coverage. And the record shows, too, that a specific premium charge was made at least once and possibly twice for that coverage.

The weight of modern authority supports plaintiff's

position, we think. It bespeaks a public policy declared by statute which, when applied to this contract of insurance, would extend to this plaintiff uninsured motorist coverage even though he and not his parents was the owner of the automobile he was driving at the time of the accident. The statute (RCW 48.22.030) requiring that uninsured motorist coverage shall be provided unless the insured overtly rejects it in writing—or, it might be added, expressly communicates to the company his refusal to pay the premium for it—is but one of many regulatory measures designed to protect the public from the ravages of the negligent and reckless driver. It was enacted to expand insurance protection for the public in using the public streets, highways and walkways and at the same time cut down the incidence and consequences of risk from the careless and insolvent drivers. The statute is both a public safety and a financial security measure. Recognizing the inevitable drain upon the public treasury through accidents caused by insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature for many sound reasons and in the exercise of the police power took this action to increase and broaden generally the public's protection against automobile accidents.

There is no longer any judicial doubt that the state may regulate insurance, so closely is that industry affected with the public interest (43 Am. Jur. 2d *Insurance* § 60 (1969)), and regulatory statutes become a part of the policy of insurance. *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937).

Thus, a valid statute becomes a part of and should be read into the insurance policy. *Dowell, Inc. v. United Pac. Cas. Ins. Co.,* 191 Wash. 666, 72 P.2d 296 (1937); *Williams v. Steamship Mut. Underwriting Ass'n, Ltd.,* 45 Wn.2d 209, 273 P.2d 803 (1954); *State Farm Mut.*

*Auto. Ins. Co. v. Hinkel,* 87 Nev. 478, 488 P.2d 1151 (1971); *Hendricks v. Meritplan Ins. Co.,* 205 Cal. App. 2d 133, 22 Cal. Rptr. 682 (1962). Read into the insurance contract as a public policy designed to expand uninsured motorist coverage to a significantly greater proportion of the population, the statute should receive from the courts a construction that will effectuate its manifest purpose. This principle, variously stated in other jurisdictions, was so declared in *First Nat'l Ins. Co. of America v. Devine,* 211 So. 2d 587, 589 (Fla. App. 1968):

> The position taken by courts of this State, and by courts of other States, makes it clear that restriction upon the coverage provided by uninsured motorists provisions of automobile insurance policies is against public policy and is void. Nat'l Automobile Insurance Assoc. v. Brumit, Fla.1957, 98 So.2d 330; Sellers v. United States Fidelity & Guaranty Co., Fla.1966, 185 So.2d 689; Travelers Indemnity Co. v. Powell, Fla.App.1968, 206 So.2d 244; Butts v. State Farm Mutual Insur. Co., Fla.App.1968, 207 So.2d 73; Tuggle v. Government Employees Insur. Co., Fla.1968, 207 So.2d 674; Linkens v. Furman, 1964, 52 Ill. App.2d 1, 201 N.E.2d 645; Hendricks v. Meritplan Insurance Co., 205 Cal.App.2d 133, 22 Cal.Rptr. 682; Mission Insurance Company v. Brown, 1965, 47 Cal.Rptr. 363, 407 P.2d 275.
>
> . . .
> . . . *The statute does not contemplate a piecemeal whittling away of liability for injuries caused by uninsured motorists.*

(Italics ours.) *Contra: Rushing v. Allstate Ins. Co.,* 216 So. 2d 875 (La. App. 1968); *Owens v. Allied Mut. Ins. Co.,* 15 Ariz. App. 181, 487 P.2d 402 (1971); *McElyea v. Safeway Ins. Co.,* 131 Ill. App. 453, 266 N.E.2d 146 (1970).

Another statement of the governing principle concerning uninsured motorist insurance, when that coverage is engendered by statute, is found in *Mission Ins. Co. v. Brown,* 63 Cal. 2d 508, 407 P.2d 275, 47 Cal. Rptr. 363 (1965). Defendants there were passengers in an automobile insured by plaintiff insurance company; they were injured in Mexico in a collision with an uninsured vehicle at a place within 75

miles of the United States border on a trip of less than 10 days' duration. The policy issued by plaintiff company in that case contained an uninsured motorist coverage provision but had a territorial limitation of that coverage to "accidents which occur . . . within the United States of America, its territories or possessions, or Canada." The California Insurance Code, § 11580.2 provided, as does our code, that all carriers in issuing casualty policies must provide uninsured motorist coverage unless otherwise expressly rejected or agreed upon in writing. Holding the territorial limitations in the insurance policy void as against public policy and citing *Hendricks v. Meritplan Ins. Co., supra,* which in turn had held void a restriction as to uninsured motorist protection of persons under 25 years of age, the court said, at page 511:

> The statute clearly does not contemplate a piecemeal whittling away of liability, either territorially or under certain driving conditions, for injuries caused by uninsured motorists.

*Accord: Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So. 2d 229 (Fla. 1971); *State Farm Mut. Auto. Ins. Co. v. Hinkel, supra; Allstate Ins. Co. v. Meeks,* 207 Va. 897, 153 S.E.2d 222 (1967); *Gulf American Fire & Cas. Co. v. McNeal,* 115 Ga. App. 286, 154 S.E.2d 411 (1967); *Travelers Indem. Co. v. Powell,* 206 So. 2d 244 (Fla. App. 1968); *Butts v. State Farm Mut. Auto. Ins. Co.,* 207 So. 2d 73 (Fla. App. 1968); *Lopez v. State Farm Fire & Cas. Co.,* 250 Cal. App. 2d 210, 58 Cal. Rptr. 243 (1967); *Vaught v. State Farm Fire & Cas. Co.,* 413 F.2d 539 (8th Cir. 1969); *Protective Fire & Cas. Co. v. Woten,* 186 Neb. 212, 181 N.W.2d 835 (1970); *California Cas. Indem. Exchange v. Steven,* 5 Cal. App. 3d 304, 85 Cal. Rptr. 82 (1970).

This principle was properly epitomized in a statement made in *Bankes v. State Farm Mut. Auto. Ins. Co.,* 216 Pa. Super. 162, 168, 264 A.2d 197 (1970):

> In summary, our Supreme Court and Legislature have indicated that the provisions of the uninsured motorist act must be liberally construed so that innocent victims

will be protected from irresponsible drivers. The intent of this act is that an insured recover those damages which he would have received had the uninsured motorist maintained liability insurance.

The legislative purpose—to broaden greatly the protection of the public against economic consequences and partly to ameliorate the ravages from injuries at the hands of uninsured persons operating vehicles upon the public streets and highways—is not to be eroded or, as the cases say, whittled away by a myriad of legal niceties arising from exclusionary clauses. RCW 48.22.030 should be read, therefore, to declare a public policy overriding the exclusionary language so that the intendments of the statute are read into and become a part of the contract of insurance.

We are, therefore, of the opinion that the language of the insurance contract purporting to provide coverage under the uninsured motorist section to "(a) the named Insured and any relative" and defining relative under the automobile liability section as "a relative of the named Insured who is a resident of the same household" must be read so as to afford to the son of the named insureds, living with them in their household, protection against uninsured motorists while operating his own automobile.

Affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, and WRIGHT, JJ., concur.

NEILL, J. (concurring)—As I understand the majority opinion, it reasons as follows:

(1) The statutory policy of RCW 48.22.030 vitiates any clauses in subject insurance contracts which, not being expressly sought and agreed to by the purchaser, attempt to make the meaning of "insured" for purposes of uninsured motorist coverage narrower than the meaning of that term under the primary liability section of the policy.

(2) Conversely, statutory policy does not impede separate clauses or definitions of "insured" for uninsured motorist purposes which afford a scope of coverage which is

the same as or broader than that afforded by the primary definition of the term.

(3) The exclusion clause attacked in this appeal is invalid in light of the above noted statutory policy. There is no parallel provision in the primary liability section, and the exclusion has the prohibited effect of narrowing the meaning of "insured" for purposes of uninsured motorist coverage. The exclusionary clause is independent from definitions in the contract; so its invalidity does not affect those other provisions.

(4) The insurance contract contains a separate definition of "insured" for purposes of uninsured motorist coverage, which is broader in scope than that in the primary liability section of the policy. It is, therefore, valid. Plaintiff is an "insured" under this separate definition.

I agree with the result, and with the majority's reasoning as I understand and have outlined it. I believe, however, that this brief concurrence is appropriate in order to set forth my perception of the majority rationale as the basis for concurrence.

In my view it would be a misreading of today's decision to infer therefrom that the statutory policy prohibits the parties from agreeing to narrower definitions of "insured" than that found applicable in the contract before us. RCW 48.22.030 provides for uninsured motor vehicle coverage in automobile liability insurance contracts "for the protection of persons insured thereunder." The statute nowhere mandates a particular definition of "persons insured" and the extent of that definition is thus left to voluntary agreement. In that respect, neither the terms nor the intent of the statute alters our general rule that parties are free to contract for any risk they choose, adjusting the premium to the risks assumed, and that courts may not modify or revise the intent of the parties under the guise of contract construction. *West American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 44, 491 P.2d 641 (1971); *Tsapralis v. Public Employees Mut. Cas. Co.*, 77 Wn.2d 581, 582, 464 P.2d 421 (1970); *Tucker v. Bankers Life & Cas.*

*Co.,* 67 Wn.2d 60, 67, 406 P.2d 628 (1965); *Jeffries v. General Cas. Co. of America,* 46 Wn.2d 543, 283 P.2d 128 (1955).

The policy of RCW 48.22.030 requires that insurers make available uninsured motorist coverage to a class of "insureds" that is at least as broad as the class in the primary liability sections of the policy. It does not preclude the parties from reaching agreement as to the scope of that class in the first instance. The majority correctly removes the exclusionary clause in the contract before us, as a void attempt to sidestep the statutory policy. The additional conclusion, that plaintiff is an "insured" for purposes of uninsured motorist coverage, results from the terms of this contract rather than any statutory policy. Consistent with the statute, this contract need not have stated a separate definition of "insured" for uninsured motorist purposes, could as well have stated a separate definition having the same scope as that under the primary liability section, and even could have narrowed the meaning if the purchaser so agreed after rejecting the option for the broader coverage. The contract before us adopts none of these possibilities. Rather, by independent definition, it broadens the meaning of "insured" for uninsured motorist purposes, thereby including plaintiff within the covered class. That contract term is the source of defendant's liability.

STAFFORD, J., concurs with NEILL, J.