[No. 705-2.   Division Two.   August 29, 1973.]

SHERMAN T. FRASE, *Respondent*, v. LEONARD T. JOHNSON *et al.*, *Respondents*, NATIONAL INDEMNITY COMPANY OF OMAHA, *Appellant.*

*Samuel C. Rutherford* and *Russell A. Austin* (of *Rutherford, Kargianis & Austin*), for appellant.

*Stanley J. Krause*, for respondent.

PEARSON, C.J.—This appeal is taken from a judgment for

the plaintiff, Sherman T. Frase, in a controverted garnishment proceeding arising out of a previously tried personal injury case. National Indemnity Company of Omaha, the garnishee-defendant and appellant herein, contests *inter alia* the refusal of the trial court to vitiate insurance coverage by imputing to the named insured the failure of his employee to cooperate in the defense of that case.

Respondent cross-appeals from the failure of the trial court to award an additional sum, representing property damages in an amount stipulated to in the prior action, but not segregated in the general verdict rendered.

The facts of the underlying personal injury case which gave rise to the instant garnishment action are fully set forth in a previous opinion of this court. *Parris v. Johnson,* 3 Wn. App. 853, 479 P.2d 91 (1970). Briefly, plaintiff's injuries resulted from a collision between his car and a logging truck owned by defendant, Leonard T. Johnson, and driven by his nephew and employee, James W. Johnson. One Diane Sleeper was a passenger in the Johnson truck at the time of the accident. A judgment for the plaintiff in the amount of $130,000 was upheld by this court.

National Indemnity had issued to Leonard T. Johnson as named insured a combination automobile liability policy with coverage limits of $50,000, each person, and $100,000 each accident for bodily injury, together with $20,000 each accident for property damage. This insurance policy was in effect at the time of the accident, and a certificate thereof was on file with the Washington Utilities and Transportation Commission (WUTC) as required by RCW 81.80.190.[1]

---

[1]RCW 81.80.190 provides, in part:

The commission shall in the granting of permits to "common carriers" and "contract carriers" under this chapter require such carriers to either procure and file liability and property damage insurance from a company licensed to write such insurance in the state of Washington, or deposit such security, for such limits of liability and upon such terms and conditions as the commission shall determine to be necessary for the reasonable protection of the public against damage and injury for which such carrier may be liable by

James W. Johnson was an additional insured under the omnibus clause of the policy. The policy contained a standard assistance and cooperation clause providing as follows:

> The insured shall cooperate with the company and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.

The gravamen of National Indemnity's defense to this action concerns the failure of the defendant driver, James W. Johnson, to cooperate with it in accordance with this clause. James gave false information to National Indemnity's representatives regarding his activities on the night before the accident. In addition, he testified inconsistently regarding those activities at the trial of the main action, and was impeached. The plaintiff adduced evidence that James Johnson had attended an all-night party prior to the accident, in direct contradiction to his original version. This was arguably the turning point in the plaintiff's successful case. *Parris v. Johnson, supra* at 857-58.

At the trial to the court of this garnishment action, National Indemnity took the position that Leonard T. Johnson had solicited or otherwise encouraged James' misrepresentations, and had additionally offered inducements to the truck passenger, Diane Sleeper, to likewise mislead National Indemnity's representatives and to testify falsely at the original trial. The testimony of James Johnson and Diane Sleeper was proffered to establish these allegations. Suffice it to say that the trial judge, as the trier of fact, exercised his exclusive power to evaluate the credibility of the witnesses, and found that while James had indeed failed to cooperate with the company in the defense of the main action, Leonard Johnson, the named insured, did assist and cooperate in every respect in accordance with the policy clause. Judgment was entered against National In-

---

reason of the operation of any motor vehicle.

Pursuant to this statute, the WUTC has by regulation required a $25,000 minimum liability insurance coverage. WAC 480-12-350.

demnity in the amount of $25,000,[2] together with interest from the date of the verdict on the full prior judgment of $130,000, plus attorney's fees and costs.

Notwithstanding the conclusiveness of the factual determinations of the trial court, National Indemnity urges that James Johnson's breach of the cooperation clause must, as a matter of law, be imputed to his employer, thus barring plaintiff's recovery upon the policy. We disagree.

We do agree with National Indemnity that any imputation to an employer of his employee's misrepresentations depends upon the existence of an agency relation. Misrepresentations of a servant or other agent are imputed to a principal if they are authorized, apparently authorized, or within the power of the agent to make for the principal. Restatement (Second) of Agency § 257 (1958).

National Indemnity urges that representations known to the agent to be untrue are authorized if the agent has reason to believe from his principal's conduct that the principal wishes the statements made, although untrue. Restatement (Second) of Agency § 257, comment *a* (1958). We also accept this proposition.

However, National Indemnity ignores the court's finding which specifically rejected the testimony of James W. Johnson and Diane Sleeper concerning the issue, but instead accepted the testimony of Leonard Johnson that he had not actually, apparently, or by his conduct authorized the factual misrepresentations made.

We point out initially that the cooperation clause

[2]National Indemnity paid without protest $25,000 of the prior judgment, plus interest and costs. This sum represents the statutorily imposed minimum liability coverage for common and contract carriers. *See* footnote 1. The company does not contend that it can limit this minimum coverage by policy provision. *See Brummett v. Grange Ins. Ass'n,* 4 Wn. App. 979, 485 P.2d 88 (1971), and *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972). **(We do not here** reach the question of whether the public policy which does not permit of a contractual limitation on statutorily imposed insurance coverage affects the duties of the insurer with regard to the excess coverage of an insurance policy so issued, despite breaches by the insureds of a cooperation or other clause.) *See generally* 31 A.L.R.2d 645 (1953).

does not require the named insured, upon penalty of losing his coverage, to guarantee the truthfulness of those he engages to operate his vehicles. *See Commercial Cas. Ins. Co. v. Missouri Pac. Transp. Co.,* 117 F.2d 313 (8th Cir. 1941).

Such an interpretation of the cooperation clause would not only be strained, it would also be manifestly unreasonable. It would mean that a named insured's policy protection would be jeopardized in every case in which a jury declines to accept a version of an accident given by his agents or employees. *See Ohio Farmers Indem. Co. v. Charleston Laundry Co.,* 183 F.2d 682 (4th Cir. 1950). In our opinion, this is an unacceptable result unless the named insured has in some manner authorized the employee to falsify the facts.

Accordingly, we hold that the misstatements of an employee as to the facts of an accident in which he was involved are not imputable to his employer so as to defeat insurance coverage under the cooperation clause of his liability policy, where he has neither actually nor apparently authorized the misstatements, nor in any other manner granted power to the employee to make them. *See* Restatement (Second) of Agency § 257 (1958).

National Indemnity contests the award of $2,500 attorney's fees to the respondent. The prevailing plaintiff in a controverted garnishment proceeding may recover reasonable attorney's fees. RCW 7.33.290. The trial court found $2,500 to be a reasonable fee. No error was assigned to that finding, as required by CAROA 43. Thus, the reasonableness of the fee must be deemed a verity. *State v. Baker,* 1 Wn. App. 420, 462 P.2d 254 (1969).

National Indemnity assigns error to the award of interest on the entire prior judgment of $130,000. No argument is made in support of this contention. Moreover, the clear language of the policy provides for such a result. Accordingly, we find no error.

National Indemnity further contends that its case was prejudiced by what it describes as the misconduct of court

and counsel in repeatedly warning James Johnson of his constitutional rights at the garnishment hearing. National Indemnity argues that these warnings unduly inhibited the testimony of James Johnson. We have carefully examined the record in the light of these assertions. We conclude that, as James Johnson's proposed testimony was tantamount to a confession of perjury at the former trial, the warnings were proper. Moreover, we find no prejudice to National Indemnity, as the testimony it sought was ultimately elicited from the witness.

■ Respondent as cross-appellant contends that the court erred in failing to include in its judgment a further award against appellant of $805 for damages to respondent's vehicle. At the trial of the main action, the parties stipulated to that sum as the amount of such damages, and the jury was instructed concerning the stipulation. The general verdict rendered did not segregate the general and special damages, but pronounced generally on all issues submitted to the jury. See RCW 4.44.410.

When all parties to the personal injury action stipulated in open court that respondent's property damage was $805, that stipulation was binding. CR 2A; RCW 2.44.010. See *Baird v. Baird*, 6 Wn. App. 587, 494 P.2d 1387 (1972). When the stipulation was submitted to the jury in the form of an instruction, it was tantamount to a direction to the jury to allow that sum as an item of plaintiff's damage if it found in his favor. We presume that the jury followed the instructions and allowed that sum as a part of the general verdict.

Accordingly, respondent is entitled to a judgment against National Indemnity under its property damage coverage for $805. The case is remanded to the trial court with instructions to include in its judgment an additional $805. In all other respects the judgment is affirmed.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied October 10, 1973.

Review denied by Supreme Court November 20, 1973.