[No. 43942. En Banc. April 29, 1976.]

FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent,* v. LANE D. MILLER, ET AL, *Appellants.*

*Hammermaster & Robbins,* by *Charles E. Robbins,* for appellants.

*Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson,* by *Edward S. Winskill,* for respondent.

BRACHTENBACH, J.—This appeal involves the meaning of the word "automobile" as it is used in an automobile insurance policy. The policy under review was issued by the plaintiff to the defendant Lane D. Miller. During the time this policy was in effect, defendants' son was killed in an automobile accident while riding as a passenger in an uninsured vehicle. Defendants made a timely claim under the uninsured motorist provision of the policy. The insurance company, however, rejected their claim and instituted this action seeking a declaratory judgment that it was not liable. After submitting affidavits and depositions on the matter, both sides moved for summary judgment. The trial court found no genuine issue as to any material fact and granted summary judgment for the plaintiff insurance company. We affirm.

Under the terms of the policy providing for uninsured motorist coverage, the plaintiff contracted

> To pay all sums which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured, caused by accident, and arising out of the ownership, maintenance or use of such uninsured motor vehicle; . . .

The policy defines "insured" as "the named insured or a

relative." The policy further provides that a "relative" is "a relative of the named insured [defendants Lane D. Miller and Jane Doe Miller, his wife] who is a resident of the same household, provided neither such relative nor his spouse owns an automobile." In turn, an "automobile" is defined as "a four wheel land motor vehicle designed for use principally upon public roads."

The coverage question before the court is whether or not the defendants' son, who was a resident of their household, is a "relative" within the terms of the insurance policy. This question depends on whether he owned an "automobile" at the time of his death.

Some 3 months prior to his fatal accident, defendants' son purchased a 1950 Studebaker. From the affidavits and depositions, it is established that the car contained a newly rebuilt engine and was in running condition at the time of its purchase although the seller testified that the brakes needed work to perform safely. The automobile was test driven prior to purchase and, upon completion of the agreement, was driven by defendants' son to the defendants' residence where it remained through the time of the fatal accident. There can be no question that up to the time the car was parked at defendants' residence, it was an "automobile" within the terms of this insurance policy.

What happened to the automobile after it was parked at defendants' residence is not entirely clear. There is no evidence of its ever having been driven. It was apparently the intent of the defendants' son to "restore" the automobile and to use it for a commuting vehicle when he returned to college in the fall. The extent of the work done on the car by the defendants' son does not appear in the record. It is clear, however, that sometime during the period the car was parked at defendants' residence, the battery was removed. How, when, or why is not shown.

Following the fatal accident and the filing of the claim, both parties had the car examined by mechanics. The insurer's witness testified that the car was in good running condition and appeared to have no obvious operational de-

fects. At that time the condition of the vehicle was apparently the same as on the date of death of defendants' son, with the exception that a battery had been installed. The insured's mechanic stated that the automobile had defective brakes, that the windshield wipers did not work, that the generator was inoperable, and that the car had no battery. He concluded that the vehicle was dangerous and could not be operated legally or safely. It is not clear from his affidavit when he examined the car nor the extent to which the defects were serious. In short, his affidavit was largely conclusory. At best, it describes an automobile which needs relatively minor repairs to make it completely safe and operable.

In answering the question of whether this automobile is an "automobile" within the terms of the insurance policy, it must be recognized that insurance policies are to be construed in accordance with the general rules applicable to all other contracts. *Jeffries v. General Cas. Co. of America*, 46 Wn.2d 543, 283 P.2d 128 (1955). The courts in construing the contract, must interpret them according to the intent of the parties. *Ames v. Baker*, 68 Wn.2d 713, 415 P.2d 74 (1966). However, the court cannot rule out of the contract language which the parties thereto have put into it, nor can the court revise the contract under the theory of construing it, nor can the court create a contract for the parties which they did not make themselves, nor can the court impose obligations which never before existed. *Evans v. Metropolitan Life Ins. Co.*, 26 Wn.2d 594, 174 P.2d 961 (1946). The terms of the policy must be understood in their plain, ordinary, and popular sense. *Thompson v. Ezzell*, 61 Wn.2d 685, 379 P.2d 983 (1963). Clear and unambiguous language is not to be modified under the guise of construing the policy. *West American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 491 P.2d 641 (1971).

The defendants contend that an inoperable automobile is not an "automobile" within the intent and purpose of this insurance policy. It is recognized that at some stage in time a vehicle may reach such a condition that it is no

longer considered an automobile for insurance policy pur-
poses. In the majority of cases touching upon the question
of the meaning of the word "automobile" as it is used in
automobile insurance policies, the following principles are
evident.

> In those cases where the circumstances—be they the
> combination of the degree of disrepair of the car, the in-
> tent of the owner, or otherwise—suggest that the nonop-
> erating condition is a mere temporary one, the courts have
> been inclined to find that the vehicle was an "automo-
> bile" within the terms of the policy. In those cases, where
> such circumstances suggest either that the inoperable
> condition is probably permanent, or apt to be of long
> duration with little reasonable possibility of restoring the
> car to a condition where it can be driven on the roads,
> the courts have then tended to find that the vehicle is not
> an "automobile" within the terms of the policy.

*Quick v. Michigan Millers Mut. Ins. Co.*, 112 Ill. App. 2d
314, 319, 250 N.E.2d 819 (1969). *See, e.g., Republic Ins. Co.
v. State Farm Ins. Co.*, 416 S.W.2d 557 (Tex. Civ. App.
1967); *Glens Falls Ins. Co. v. Gray*, 386 F.2d 520 (5th Cir.
1967); *Green v. American Home Assurance Co.*, 169 So. 2d
213 (La. App. 1964); *Williams v. Standard Accident Ins.
Co.*, 158 Cal. App. 2d 506, 322 P.2d 1026 (1958); *Civil Serv.
Employees Ins. Co. v. Wilson*, 222 Cal. App. 2d 519, 35 Cal.
Rptr. 304 (1963).

Under the circumstances of this case, the automobile re-
quired only minor repairs, at minimal cost to defendants'
son, to become fully operable. Indeed, after the installation
of a battery, the car was driven by one of the mechanics
who inspected it. It had, in fact, been driven by the defend-
ants' son and could be driven at any time by merely put-
ting in the battery and doing perhaps minor repair work.
The intent of defendants' son to restore the exterior of the
car to its original condition did not affect its operability.

As observed in *Civil Serv. Employees Ins. Co. v. Wilson,
supra* at 523:

> Of course, it could not reasonably be maintained that if
> one were to remove a battery or some incidental operat-

ing part from a car, it would cease to be an automobile. Good sense presupposes that a vehicle designed for self-propulsion on land and which may be so self-propelled or restored to that condition with reasonable cost and effort may be considered an automobile.

We conclude that an automobile which can be driven after simply installing a battery and doing other inexpensive, minor repairs is an automobile within the meaning of this policy. This is not a case where the automobile has been junked or permanently abandoned. The policy defines an "automobile" as "a four wheel land motor vehicle designed for use principally upon public roads." Clearly, this automobile was designed for use on the public roads and could be put to that use with a minimal cost and effort.

The defendants raise an additional argument that the public policy expressed in the uninsured motorist statute, RCW 48.22.030, prohibits this type of clause. Not so. That statute does not mandate any particular scope for the definition of who is an insured in a particular automobile insurance policy. The scope of the coverage is precisely the issue before this court.

Defendants rely upon *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972). In *Touchette* we refused to give effect to an exclusionary clause in the uninsured motorist section of the policy which would have given a narrower definition to the term "insured" than that found in the primary liability section of the policy. In reaching our decision, we stated at page 335:

The legislative purpose—to broaden greatly the protection of the public against economic consequences and partly to ameliorate the ravages from injuries at the hands of uninsured persons operating vehicles upon the public streets and highways—is not to be eroded or, as the cases say, whittled away by a myriad of legal niceties arising from exclusionary clauses. RCW 48.22.030 should be read, therefore, to declare a public policy overriding the exclusionary language so that the intendments of the statute are read into and become a part of the contract of insurance.

No exclusionary clause, however, is relied upon by the insurers in this appeal. Rather, the question revolves around the initial extension of coverage to defendants. The definition of who is and who is not an "insured" under the policy is consistently applied throughout the insurance contract. For these reasons, *Touchette* is distinguishable and the public policies expressed therein are not violated. Contrary to defendants' contentions, restriction of this extended coverage to relatives of the named insured who are residents of the same household and who do not own an automobile is neither unreasonable as devoid of purpose nor inconsistent with the objective of extending coverage to the residents of the named insured's household. *Smitke v. Travelers Indem. Co.*, 264 Minn. 212, 118 N.W.2d 217 (1962).

■ Defendants' final argument is that the plaintiff has waived or is estopped from asserting the policy provision in issue. The factual basis for this contention is not relevant to our resolution of this issue. Estoppel and waiver are affirmative defenses and must be pleaded. CR 8(c). Defendants did not plead either. In general, if such defenses are not affirmatively pleaded, asserted with a motion under CR 12(b), or tried by the express or implied consent of the parties, such defenses are deemed to have been waived and may not thereafter be considered as triable issues in the case. *Radio Corp. of America v. Radio Station KYFM, Inc.*, 424 F.2d 14 (10th Cir. 1970). *See also* 3 L. Orland, Wash. Prac. 607 (2d ed. 1968); 2A J. Moore, *Federal Practice* ¶ 8.27[3] (2d ed. 1975). While the affirmative defense requirement is not to be construed absolutely, particularly where it does not affect the substantial rights of the parties, *Mahoney v. Tingley*, 85 Wn.2d 95, 529 P.2d 1068 (1975), this is not the case to abrogate the requirement.

In conclusion, the defendants' son owned an "automobile" as it is defined in this insurance policy. The defendants' son, therefore, cannot be deemed a "relative" for the purpose of affording him coverage as an "insured" under

the policy. Accordingly, the trial court properly granted summary judgment for the plaintiff.

Judgment affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and HOROWITZ, JJ., concur.