299 So.2d 466 (1974)
A. J. GOTREAUX, Jr., Plaintiff and Appellant,
v.
The TRAVELERS INSURANCE CO. and Haywood P. Loyde et al., Defendants and Appellees Appellants.
No. 4621.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied September 4, 1974.
Writ Refused November 8, 1974.
*467 Young & Burson by I. J. Burson, Jr., Eunice, for plaintiff-appellant.
Camp, Carmouche, Palmer, Carwile & Barsh by J. L. Cox, Jr., Harry E. Barsh, Jr., and Edgar F. Barnett, Lake Charles, for defendant-appellee-appellant.
Stockwell, St. Dizier, Sievert & Viccellio by Robert W. Clements, Lake Charles, L. H. Olivier, Lafayette, F. Jefferson Millican, Jennings, Holt & Woodley by E. E. Woodley, Plauche, Smith & Hebert by A. Lane Plauche, Lake Charles, for defendant-appellee.
Marcantel & Cassidy by Charles R. Cassidy, Jennings, for plaintiff-appellee.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
*468 DOMENGEAUX, Judge.
This is a suit for damages for injuries allegedly received by the plaintiff in an accident which occurred on September 21, 1970, at a service station owned by George LeGros in Jennings, Louisiana. The accident occurred when an automobile owned by Harold Landry, and being worked on by Early Gotreaux, became accidentally started and drove off the end of an elevated grease rack striking plaintiff in the head. Defendants in the suit are (1) State Farm Mutual Automobile Insurance Company insurer of the Landry automobile, and (2) The Travelers Insurance Companyliability insurer of George LeGros. Travelers subsequently filed a third party demand against Early Gotreaux, individually, and against State Farm, alleging the latter to be the omnibus insurer of Early Gotreaux. State Farm also filed a third party action against Haywood P. Loyde, d/b/a Western Auto Associate Store, Western Auto Supply Co., and Walker Co., as supplier, distributor, and manufacturer of alleged defective battery cables used in the Landry automobile. Haywood P. Loyde, in turn third partied Western Auto Supply Co. and Walker Co. From a judgment dismissing plaintiff's demands and rejecting the third party claims, A. J. Gotreaux, Jr., has appealed to this Court. Both insurers, State Farm and Travelers, have also prosecuted appeals.
The facts are that shortly before the accident herein Harold Landry, the owner of a standard transmission, 1968 Buick sedan, had asked his neighbor and friend, Early Gotreaux, to tune up the engine of his car and check on the battery cables which Landry had personally installed on his vehicle about three weeks before. Landry informed Gotreaux that on a couple of prior occasions the motor had continued to run after the ignition had been switched off. Gotreaux was a mechanic by trade and maintained a small mechanical shop at his home where he often repaired automobiles during his off-duty hours. When he needed additional tools, such as a grease rack, he frequently took the car he was working on to his brother-in-law's (George LeGros) service station. On the aforementioned date Gotreaux replaced the ignition points and spark plugs in the automobile at his home and in order to facilitate proper examination of the battery cables drove the Buick to his brother-in-law's service station to use the grease rack. Upon arrival Gotreaux placed the Landry car upon the "drive on" grease rack, situating the automobile about one foot from the forward "stops" on the rack. Gotreaux left the Buick in first gear and did not put into use the emergency brake of the automobile. He proceeded to examine the battery cable which runs to the solenoid by feeling blindly to see if it was fastened securely. This caused a straight connection between the battery cable and the solenoid starter post, thereby starting the engine, which had been left in gear, and the car "drove" off the rack. At that moment, A. J. Gotreaux (brother to Early Gotreaux and the plaintiff herein) was standing in front of the grease rack looking for a wrench near a work bench located at the front of the rack. Plaintiff was also accustomed to using the tools and facilities of the Le-Gros Service Station and on the day in question was having a friend repair or adjust his car suspension system. The front bumper of the car struck plaintiff's head in a glancing fashion as the car began its partial descent from the rack. The car ended up in a suspended position with its front end resting on the work bench and its rear end still on the grease rack, while the engine continued to run. Plaintiff sustained a severe laceration to the side of his head and was rushed to the Jennings American Legion Hospital. Early Gotreaux subsequently climbed up to the automobile and disengaged the "hot" battery cable from its post, thereby allowing the engine to stop. It was his testimony that when he thereafter replaced the battery cable the engine immediately restarted and began to run. Upon examination, he *469 found the reason for such occurrence to be the fact that the battery cable had become fused to the solenoid starter post.
Plaintiff subsequently instituted these proceedings on June 28, 1971, alleging that he had become totally disabled as a result of the accident.
Plaintiff sued State Farm essentially on two premises. First he argued that Harold Landry was negligent in installing the battery cables, that said negligence was at least a concurrent cause of the accident, and that State Farm was liable under its policy provision providing coverage for damage "arising out of the ownership, maintenance, or use of the owned automobile". He also argued that Early Gotreaux[1] was negligent on the day in question and that Early was an omnibus insured under the State Farm policy. Plaintiff also sued Travelers Insurance Company alleging that LeGros and/or his employees were guilty of negligence proximately causing the accident, by reason of the fact (a) that the plaintiff was owed a duty as an invitee, and (b) that the grease rack was defective and inherently dangerous.
State Farm denied coverage on the basis of either of plaintiff's allegations and in its third party action alleged that the battery cables installed by Harold Landry were defective and that the supplier, distributor, and manufacturer of the product were liable.
Travelers denied negligence on the part of George LeGros and alternatively sought contribution and/or indemnity from Early Gotreaux, individually, as a negligent party, and from State Farm as insurer of Landry and as omnibus insurer of Early Gotreaux.
After a trial on the merits, the district judge, in a well reasoned written opinion, dismissed plaintiff's suit and found the following:
(1) There was no merit to the argument that the cables were defective.
(2) Plaintiff was a licensee rather than an invitee.
(3) The grease rack was not proven to be defective.
(4) Harold Landry was negligent in installing the battery cables but his negligence was only a "remote" rather than a "proximate" cause of the accident.
(5) The negligence of Early Gotreaux was the "proximate cause" of the accident.
(6) Early Gotreaux was not an "omnibus insured" under the policy because said policy did not provide coverage for a person performing maintenance operations on the car.
There is no real dispute as to the negligence of Early Gotreaux. The other issues raised on this appeal are: (a) The negligence of Harold Landry; (b) Whether Early Gotreaux is an "omnibus insured" under the State Farm policy; (c) Whether there was negligence on the part of George LeGros and/or his employees; and (d) Alternatively, in the event any of the foregoing issues described are decided in the affirmative, the various third party demands filed by the respective insurers must be considered.
On the question of Harold Landry's negligence, the district court decided that Landry was a "shadetree mechanic" and that he incorrectly installed the cable which ultimately made contact with the solenoid wire on the date of the accident. The trial judge however held that such negligence was not the proximate cause of the accident.
The record in our opinion does not however bear out that Harold Landry was negligent under the particular facts and circumstances *470 of this case. Harold Landry is not a mechanic by trade. Although Landry stated he had changed battery cables before, the fact remains that for even minor repair jobs such as changing ignition points and plugs he took his own automobile to an experienced mechanic, Early Gotreaux. In this particular case he wanted to replace his battery cables because they had become heavily corroded at the posts of the battery. To obtain the cables he went to the local Western Auto store owned by Haywood Loyde. Loyde in turn consulted a manual which specified the cables to be used for certain automobiles and sold Landry a cable. Thereafter Landry testified he removed the old cable, checked to see if they were the same, (the only difference being the attaching mechanism to the battery posts) and replaced the new cable in the same manner. He further testified that although he didn't recall whether he used a lock washer when securing the end of the cable to the solenoid, he stated that he tightened the nut holding the cable securely. He further indicated he knew that if the battery cable came in contact with the starter post on the solenoid a short would result, and he took this into consideration. Thereafter, upon two occasions during the following three weeks before the accident, the car continued to run after the ignition key was turned to the off position. On each occasion he checked the battery cable installation to see if that was the problem. On the last occasion he got under the car to see if the connecting nut was tight. Thereafter Landry drove the automobile without incident, often over rough roads.
Under the total circumstances we find no negligent conduct on Landry's part. The cable sold to him by Haywood Loyde was essentially the same as the one which he replaced. He securely tightened the nut which held the cable in place on the solenoid. He rechecked the cable after each of the two instances when the car continued to run after being turned off. There is no testimony contradicting this, except for that of Early Gotreaux stating that when he examined the solenoid and battery cables after the accident, he found both the connecting post on the solenoid (to which the battery cable was attached) and the securing nut loose. This testimony, however, was not corroborated by any evidence while that of Landry was.
The only expert called to testify (other than Early Gotreaux himself) was Norbell Pender, a service manager for an automobile dealership in Texas City, Texas. He stated lock washers should be used to connect the battery cable to the solenoid post but that many times they were not. In his opinion if the cable and connectors were as loose as Early Gotreaux so testified he felt the car would not have started over two or three times. He stated if it started several times he couldn't say the cable was improperly installed. In fact it was his opinion that when Early Gotreaux grabbed the cable he pulled it down into contact with the starter post, thereby causing the engine to start. He further testified that if the battery cable was loose it could come into contact with the solenoid starter post and keep the engine running after being turned off. It was however his opinion that this was not the usual case and that the engine idling too high, in addition to several other reasons, could have been and are the usual causes for such an occurrence. Both employees of LeGros, Ivy Crochet and Wilfred Chapman, testified that on the day of the accident the Landry vehicle engine was idling above the normal speed.
The next question we address ourselves to is whether Early Gotreaux was an "omnibus insured" under the State Farm policy issued to Harold Landry. Plaintiff makes a number of arguments in this respect.
Plaintiff's first contention is that the Louisiana Motor Vehicle Safety Responsibility Law (especially LSA-R.S. 32:900, subd. B(2)) mandates that Early Gotreaux be found an "omnibus insured". Said law allegedly requires that motor vehicle liability policies shall insure any person using a *471 vehicle with the express or implied permission of the named insured against loss arising out of the ownership, maintenance or use of any such vehicle. Secondly, it is asserted that State Farm's policy itself requires that full coverage be provided therein complying with the aforementioned language of the statute.
We are of the opinion however, as pointed out in briefs presented by State Farm, that the foregoing statute has no application in the present case.
In Johnson v. Universal Automobile Ins. Association, 124 So.2d 580 (La. App. 3rd Cir. 1960) this court pointed out that the "Proof of Financial Responsibility" section of the Motor Vehicle Safety Responsibility Law, 32:891 et seq. is prospective in application, applies for the protection of the general public, and requires that a court-determined tort-feasor who has not satisfied liability arising out of a previous accident must post "proof of financial responsibility" as defined in the statute, before again using the highways. Until such time no driver is required to carry liability insurance, nor does the policy have to contain particular provisions required by the statute. See also Kennedy v. Audubon Ins. Co., 82 So.2d 91 (La.App. 1st Cir. 1955).
It was also pointed out in Johnson that the provision in the insurance policy therein, requiring its compliance with the statute, applied only when the policy was properly certified and accepted as meeting the requirement for proof of financial responsibility for future accidents. The language of the policy herein is strikingly similar.[2] The Court in Johnson further indicated that the defendant therein had not been required to furnish a policy certified as proof of financial responsibility and that such pertains only to future accidents. This is the same situation in our case. Thus the act has no effect since there is no evidence indicating the policy was required herein nor that it was certified under the act.
Plaintiff further alleges that Early Gotreaux is an "omnibus insured" by reason of several of the other provisions of the policy. First it is argued that Gotreaux's activities are clearly within the purview of the State Farm (Part 1Liability) policy providing that said policy undertakes "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: (a) bodily injury . . . arising out of the ownership, maintenance or use of the owned automobile . . . ."
The term insured is defined in the "omnibus clause" as follows:
"PERSONS INSURED: The following are insureds under Part 1:
(a) with respect to the owned automobile.
(1) the named insured and any resident of the same household.
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and. . ." (emphasis ours)
It is maintained that A. J. Gotreaux's injury clearly had connection with "the ownership, maintenance or use" of Harold *472 Landry's automobile. It is further argued that Early Gotreaux's actual use of the Landry vehicle at the time of the accident was within the scope of Landry's permission since Gotreaux was doing precisely what Landry had requested him to do.
In turn State Farm denies coverage relying primarily upon the foregoing cited language in Part 1Liability and the "omnibus clause" of the policy. Defendant-insurer contends that only the named insured and residents of his household are covered against liability arising from "ownership or maintenance" of the owned automobile and that the liability of other persons is insured against only if it arises out of the "use" of the owned automobile. State Farm further maintains the accident arose as a result of "maintenance" by Early Gotreaux, rather than "use", and consequently Gotreaux was not an omnibus insured.
This reasoning was squarely upheld in Chase v. Dunbar, 185 So.2d 563 (La.App. 1st Cir. 1966), writs denied 249 La. 573, 187 So.2d 738 (1966) "no error of law". See also Wall v. Windmann, 142 So.2d 537 (La.App. 4th Cir. 1962). The trial judge here found the principles enumerated in these two cases controlling.
State Farm also argues in the alternative that Early Gotreaux is excluded from coverage by the clause stating in pertinent part that the policy does not apply under Part 1:
"(g) to an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business."
Under the heading "Definitions" in Part 1 of the policy we find the following:
"`automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles;" (emphasis ours)
The defendant insurer alleges that Gotreaux was using the Landry automobile while engaged in the automobile business, i. e. repairing the automobile.
The plaintiff counters with the argument that Gotreaux was not "engaged in the automobile business" because there was no evidence that he was paid for the work done on the Landry automobile on the day of the accident. The evidence however preponderates to the contrary. Landry testified he paid Early for the service although he did not recall the exact amount. Early disputed this testimony saying it was done as a gratuity. Yet Gotreaux testifies himself to the effect that Landry did offer to pay for the work done but that he was not going to charge him for examining the battery cables, but just for the points and plugs. It is also clear from the record that Landry had previously employed and paid Gotreaux for mechanic work. The trial judge found that Gotreaux was a "moonlight mechanic" who tended to his own customers following his regular working hours of employment at Oustalet Ford, using both the facilities at his home and the LeGros service station. We are thus satisfied from the record that the Landry automobile was being used by Gotreaux while engaged in the repairing thereof, i. e. automobile business.
This aforementioned exclusionary clause has previously been held by this court to be unambiguous and a clear statement of intention of the parties to the insurance contract. Deville v. United States Fidelity and Guaranty Co., 258 So.2d 694 (La.App. 3rd Cir. 1972). See also Grace v. Armstrong, 266 So.2d 737 (La.App. 4th Cir. 1972). Accordingly we find this exclusionary clause applicable to the facts herein.
By reason of the foregoing we affirm the trial judge in his holding that the State Farm policy afforded no coverage in this case. As a result State Farm is not liable under the policy and we need not consider its third party allegations.
In conclusion, we turn to the allegation of plaintiff that George LeGros and/or his employees were negligent and that such negligence was a proximate cause of the damage done to A. J. Gotreaux, Jr.
*473 Plaintiff's first contention is that the injured plaintiff was an invitee and owed the duty by LeGros of reasonable and ordinary care which includes the prior discovery and correction or warning of reasonably discoverable conditions that may be unreasonably dangerous. The trial court however determined that plaintiff was only a licensee on the LeGros premises and that the owner's duty was only to refrain from willfully or wantonly injuring him and to warn of those nonapparent defects or dormant dangers on the premises which are within the owner's actual knowledge. The trial court further determined no latent defects were present on the premises, but if any were present that the evidence failed to indicate LeGros was actively negligent in connection therewith. We concur in this finding.
Plaintiff's argument in this respect is that the arrangement to use the service station without charge "promoted harmony and fraternal sentiment in a large family", that "encouragement was given" LeGros' wife's (sister of the Gotreauxs) large family "to do business at the service station", that "it facilitated the good will necessary to foster Gotreaux's continued patronage", etc. This is a novel argument, however the fact remains that A. J. Gotreaux entered the service station premises with the tacit or implied permission of Le-Gros, but only for his own interest, i. e. fixing his automobile, and completely unconnected with LeGros' interest. He had no intention of transacting any business at the station.
Therefore, in our opinion A. J. Gotreaux was clearly termed a licensee rather than an invitee. See Alexander v. General Accident Fire and Life Assurance Corp., 98 So.2d 730 (La.App. 1st Cir. 1957).
Plaintiff's second argument is that the grease rack was inherently dangerous and that LeGros was negligent in maintaining such a rack at his service station and allowing it to be used. It is pointed out that the grease rack was a roll-on-type, at least 23 years old, and no longer used by modern service stations. The specific defects alleged are (a) that the safety "stops" on the rear of the rack had not worked since LeGros became owner of the service station, (b) that the rack had a "perilous" lean of three to four inches to the front, and (c) that the left front "step" of the rack was defective.
Admittedly the grease rack was outmoded (only because it could not accommodate different sizes of newer model automobiles). But this alone does not make it defective.
Further, the fact that the rear safety "stops" were defective (which is admitted by LeGros) is not material, since this had nothing whatsover to do with the accident. The automobile drove off the front of the grease rack.
Next is the argument that the rack had a "perilous" lean. This is not however testified to by any of the parties. Instead Early Gotreaux testified to the effect that the rack had a slight lean if too much weight were put in the front. No expert testimony, however, indicated that if in fact the rack did have a slight tilt that it was dangerous, much less "perilous". LeGros and Ivy Crochet, an employee of LeGros at the time of the accident testified they never noticed a tilt.
The strongest assertion by plaintiff is that the left front "stop" of the rack was defective prior to the accident. It is undisputed that the left front "stop" was found to have been damaged subsequent to the accident. But it is also a fact that Early Gotreaux placed the automobile on the rack, stopping it about one foot from the forward "stops", and once the automobile started, the full weight of the automobile came against this left "stop".
LeGros argues that the damage to the stop occurred as a result of the accident. This testimony is supported by the fact that the wrecker driver, who helped to remove the automobile after the accident, *474 stated he noticed a bolt missing from the left front "stop" on the rack upon examination found the shank portion of a sheared off bolt beneath the left front stop.
The trial court determined the most likely explanation was that the bolt sheared off when the car fell from the rack, and concluded that plaintiff failed to bear the burden of proving the grease rack defective. Therefore the insurer, Travelers Insurance Company, was absolved from any liability in the matter. We find no manifest error in the conclusion and as a result need not discuss the allegations brought out by Travelers in its third party actions.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
Affirmed.
NOTES
[1] Early Gotreaux was not, however, named as defendant by his brother, the plaintiff, A. J. Gotreaux, Jr.
[2] "Financial Responsibility Laws. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." [State Farm PolicyPart 1Liability, p. 4]