AETNA INSURANCE COMPANY OF HARTFORD, *Appellant*, v. RAY
J. KENT, *et al.*, *Respondents.*

*Aiken, St. Louis & Siljeg* and *Charles E. Siljeg*, for appellant.

*Jordan, Britt & Templeman, Dennis J. Jordan, Miracle, Pruzan & Nelson, Howard P. Pruzan, Wolf, Hackett, Beecher & Hart, John A. Hackett*, and *Wayne C. Vavrichek*, for respondents.

CALLOW, J.—The parties, Aetna Insurance Company, Kent, Tracy Smith, Utilities Construction Corporation Company, Inc., and the State of Washington, stipulated the facts to the trial court as follows:

1. Intervenor Tracy Smith has commenced and there is now pending in the above-entitled court as Cause No. 103950 an action against defendant Kent and intervenors Utilities Construction Corporation and State of Washington. In said action, Intervenor Tracy Smith is prepared to prove the following facts in support of her claim:

A. On Wednesday, July 15, 1970, at approximately 1:10 p.m., Tracy Smith was riding as a passenger in the right front seat of a 1969 P1800 Volvo Sports coupe owned and operated by Mark P. Poll. They were proceeding in a westerly direction along State Highway No. 530. As the Volvo reached a point approximately 1.6 miles west of Darrington, a dump truck owned by Jack Kent, doing business as Jack Kent Dump Truck Service, entered upon the highway from a gravel pit side road to the south. The truck made a lefthand turn to travel westerly, and shortly thereafter a large rock (approximately 8 inches long) fell from the truck's load, bounded on the roadway, and struck the windshield on the passenger side and struck intervenor directly in the face, causing very serious injuries. General damages are sought in the amount of $150,000.00.

B. The truck from which the rock came was part of an operation involving the transporting of rock, gravel and dirt from a Washington State-owned gravel pit to the Squire Creek Bridge construction site, located about 2 miles west of the gravel pit entrance. The State had entered into a general contract with Utilities Construction Corporation and Utilities Construction had subcontracted with Kent to transport the materials from the gravel pit to the construction site. In performing this subcontract, Kent furnished a 1966 Euclid loader and its operator and a number of dump trucks and drivers. The loader, by use of a mechanical shovel, scooped up quantities of materials at the gravel pit site and deposited them in the dump trucks. The loader also performed other functions at the pit, including digging and relocation of fill material. The loading of the trucks was controlled by the loader operator who signalled the truck drivers when the truck was loaded and ready to be taken to the construction site. Thereafter, the dump trucks were driven from the pit on said side road to the highway, and then upon the highway to the construction site.

C. The truck involved in the described injury causing event was a land motor vehicle designed for travel on

public roads, and the loader involved in said event was a self-propelled land vehicle designed for use principally off public roads.

D. Intervenor Smith's claim is based both upon negligence in the use and operation of the said truck and upon negligence in the use and operation of the said loader in connection with the loading of materials at the gravel pit site and the transporting of materials from the gravel pit site to the bridge construction site.

E. Intervenor Smith's claim against intervenor Utilities Construction and the State of Washington is based upon both their failure to adequately supervise and control the operation so that Kent's trucks were not overloaded and driven in an overloaded condition and upon their liability as principals for the negligence of Kent and Kent's employees as their agents.

2. As of the date of the injury-causing event, July 15, 1970, there were in full force and effect two policies of insurance issued by Aetna Insurance Company to Kent, Policy No. CG 23 93 15, a copy of which is in evidence as Exhibit 1, and Policy No. CG 24 30 82, a copy of which is in evidence as Exhibit 2. Aetna agrees that Exhibit 1 applies to the lawsuit instituted by Tracy Smith and has tendered the full amount of the coverage of said policy, $25,000.00, to Tracy Smith in full satisfaction of her claim. Aetna denies that the coverage of Exhibit 2 is available to the defense or satisfaction of said claim based upon the said policy's provisions.

3. It is agreed that this stipulation shall not be admissible in evidence or used in any fashion in any other lawsuit, specifically including the lawsuit described in paragraph 1 above.

The issue presented is the interpretation of the insurance contract between the insurer, Aetna, and the insured, Kent, covering the 1966 Euclid loader owned and operated by the insured. The claim of the injured party is based upon negligence in the use and operation of the loader in connection with the loading of rock at the gravel pit and its transportation to the bridge construction site. We must answer whether the insured has coverage for damages occurring away from the premises of the insured if one of the causes of the damage was negligent loading of the truck.

The trial court held that the general liability policy covering the business excluded the operation, use, loading or unloading of the loader but that the policy did not exclude negligent overloading, and coverage existed, therefore, for that eventuality. The trial court further found that overloading was an incident separable from loading and unloading, that the loader would be liable for negligently overloading a truck, and, therefore, the insurer was responsible under the policy for the particular accident that occurred.

The pertinent portions of the policy are as follows:

Definitions

When used in this policy . . .

"automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

. . .

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

. . . .

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

. . .

"mobile equipment" means a land vehicle . . . (1) not subject to motor vehicle registration, . . . or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, . . .

. . .

"occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

. . .

COVERAGE FOR PREMISES AND FOR THE NAMED
INSURED'S OPERATIONS IN PROGRESS

1. COVERAGE A—BODILY INJURY LIABILITY

. . .

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A, bodily injury . . .

. . .

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . .

Exclusions

This insurance does not apply:

. . .

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any automobile or aircraft owned or operated by or rented or loaned to the named insured, or

(2) any other automobile or aircraft operated by any person in the course of his employment by the named insured;

. . .

. . .

(m) to bodily injury or property damage included within the completed operations hazard or the products hazard;

. . .

■ When an insured establishes a prima facie case giving rise to coverage under the insuring provisions of a policy, the burden is then upon the insurer to prove that the loss brought about by an occurrence is not covered because of exclusionary provisions in the policy. *Burrier v. Mutual Life Ins. Co.*, 63 Wn.2d 266, 387 P.2d 58 (1963); *Wolf v. Washington Hosp. Serv. Ass'n*, 52 Wn.2d 518, 326 P.2d 1015 (1958); *Angelus v. Governmental Personnel Life Ins. Co.*, 51 Wn.2d 691, 321 P.2d 545 (1958). The claim of the injured party is that the insured was negligent in the use and operation of the loader in connection with the loading of materials at the gravel pit. For the purposes of the issue before us, we must proceed as if such negligence on the part of the insured can be proven. The insurer must show in this declaratory judgment action that even if the insured is negligent in this respect, coverage is excluded under the plain meaning of the policy.

■ Exclusionary clauses are to be strictly construed against the insurer writing the policy and in favor of the insured. The insurer and the insured are neither in equal positions in bargaining power when entering into an insurance contract nor are the parties on an equal footing in the ability to understand the technical and complex wording of such policies. If a clause can be construed in two ways, one favorable to the insured and the other favorable to the insurer, the construction favoring the insured must be adopted. *Dickson v. United States Fidelity & Guar. Co.*, 77 Wn.2d 785, 466 P.2d 515 (1970); *Labberton v. General Cas. Co. of America*, 53 Wn.2d 180, 332 P.2d 250 (1958); *Selective Logging Co. v. General Cas. Co. of America*, 49 Wn.2d 347, 301 P.2d 535 (1956); *Oregon Mut. Ins. Co. v. Fonzo*, 2 Wn. App. 304, 469 P.2d 989 (1970). The language of insurance policies is to be interpreted as it would be understood

by the average man. *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 517 P.2d 966 (1974).

If an ambiguous clause might include coverage for accidents caused by the process of loading and unloading, the interpretation thereof must provide that coverage. On the other hand, if the clause excludes the loading and unloading of a vehicle from coverage and is susceptible to two interpretations, that interpretation must be given which retains the protection given under the coverage provisions of the policy. *Home Indem. Co. v. Transport Indem. Co.,* 263 Cal. App. 2d 100, 69 Cal. Rptr. 504 (1968); *Truck Ins. Exch. v. Webb,* 256 Cal. App. 2d 140, 63 Cal. Rptr. 791 (1967); *American Motorists Ins. Co. v. Nashua Lumber Co.,* 103 N.H. 147, 167 A.2d 681 (1961); *Pacific Auto. Ins. Co. v. Commercial Cas. Ins. Co.,* 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251 (1945); *Ermis v. Federal Windows Mfg. Co.,* 7 Wis. 2d 549, 97 N.W.2d 485 (1959); Annot., 160 A.L.R. 1259 (1946).

The clause in the policy before us excluded coverage for injury arising out of the operation, use, loading or unloading of any automobile. As to the interpretation of these clauses, we note the following from 7 Am. Jur. 2d *Automobile Insurance* § 87, at 392 (1963):

A clause frequently contained in liability policies on trucks and commercial vehicles is one which provides in substance that the use of the insured vehicle for the purposes stated includes the "loading and unloading" thereof. Or, to the contrary, the policy may contain a clause excluding "loading and unloading" as a part of its coverage. As to either type of clause, the general rules as to the construction and interpretation of automobile insurance contracts generally apply, including the rule of construction that if the clause is ambiguous or uncertain, it will be given the construction most favorable to the insured. In this latter respect, therefore, it is well to bear in mind the difference between a clause which *includes,* and one which *excludes,* "loading and unloading" within or from the coverage of the policy. The phrase "including the loading or unloading" has generally been recognized to be one of extension, expanding the expression "use of

the truck" beyond its connotation otherwise and covering operations or acts in which the movement of the truck itself does not play a part, while the phrase "excepting therefrom loading and unloading" is a phrase of limitation and holds the word "use" to a narrow construction, excluding liabilities from acts in which the truck is not directly connected with the process from which the accident resulted.

(Footnotes omitted.) Our analysis must continue with the precept in mind that the exclusionary clause in issue is to be construed in the light most favorable to the insured.

In *American Employers Ins. Co. v. Goble Aircraft Specialties, Inc.*, 205 Misc. 1066, 131 N.Y.S.2d 393 (1954), a fishing boat named the *Pelican* sailed from a dock owned by the insured at Montauk, Long Island. When at sea north of the lighthouse at Montauk Point, the vessel encountered high winds and heavy seas and foundered with the loss of 46 lives. The insurance policy purported to indemnify the insured for bodily injury sustained by any person caused by accident. A declaratory judgment action was brought by the insurer. The insurer contended that under the terms of the policy it could not be held to indemnify the insureds for any wrongful death resulting from the catastrophe relying upon an exclusion in its policy which read in part:

"This policy does not apply:  *  *  *  (b) under Coverages B and D, except with respect to operations performed by independent contractors, to watercraft while away from premises owned, rented or controlled by the named insured, automobiles while away from such premises or the ways immediately adjoining, or aircraft, or the loading or unloading thereof."

The insurer urged that the claimed "overloading" of the vessel was excluded from coverage under the phrase "loading or unloading thereof." The court entered judgment for the insured and in commenting on this defense said on page 1072:

The complaints in the wrongful death actions also allege that,  . . .  the Pelican was permitted to sail . . . while grossly overloaded. It is argued by plaintiff that carrying a far greater number of passengers than

was proper or permitted (i.e. overloading) would relieve it of its obligation to indemnify under (b) of the Exclusions. This, because the phrase "or the loading or unloading thereof" exempts the carrier from its coverage of the conveyances insured.

We cannot interpret the quoted phrase to include the transportation of an excessive number of passengers. It is our view that the exclusionary phrase deals with accidents occurring during the process of loading or unloading at the dock. Nowhere is the word "overloading" used in the policy, nor does it expressly eliminate coverage, in the event that an excess number of passengers were permitted to board the vessel. If that were plaintiff's intention, it should have so stated in the contract which it prepared. A careful search of the decisions, both American and British, has failed to reveal any case which precisely interprets the word "overloading" in its relation to "loading and unloading". Reverting, therefore, to the rules of interpretation hereinbefore discussed, we must hold that if the loss was occasioned by the assureds' permitting the vessel to sail overloaded, the carrier would be required to indemnify.

The presented exclusionary policy provision must be interpreted with the rules applicable to exclusions in mind rather than those pertaining to inclusionary clauses. Whether the interpretation of "loading and unloading" clauses is to be under the "coming to rest" doctrine or the "complete operation" doctrine, as proposed by the insurer, is academic and inapplicable to the issue presented.[1] The "coming to rest" doctrine interprets "loading" as beginning only after the object to be transported has come into the

---

[1] In *Panhandle Gravel Co. v. Wilson*, 248 S.W.2d 779 (Tex. Civ. App. 1952), a rock fell from a gravel truck and penetrated the windshield of an automobile in much the same way the accident occurred in the instant case. A provision in the automobile policy involved provided that use of the automobile *included* the loading and unloading thereof. Commenting upon this, the court stated that insurance contracts "are to be construed according to the sense and meaning of the terms used by the parties. If clear, unambiguous and free from fraud, accident, or mistake, it is conclusively presumed that the parties intended to give the terms used their plain, ordinary, and accepted meaning." Continuing, the court noted that under the terms of the policy *use* of a truck included loading and unloading.

immediate vicinity of the insured vehicle and "unloading" to cease when the object transported first comes to immediate rest on removal from the vehicle. The "complete operation" doctrine expresses the view that the terms "loading" or "unloading" are not to be limited or controlled by place or distance but by the fact of a continuous and uninterrupted movement of the articles in getting them onto or off the vehicle. *Raffel v. Travelers Indem. Co.*, 141 Conn. 389, 106 A.2d 716 (1954); *Dairyland Ins. Co. v. Concrete Prods. Co.*, 203 N.W.2d 558 (Iowa 1973); *Travelers Ins. Co. v. Buckeye Union Cas. Co.*, 172 Ohio 507, 178 N.E.2d 792, 95 A.L.R.2d 1114 (1961); Annot., 95 A.L.R.2d 1122 (1964). The controversy over which is the appropriate doctrine pertains to whether an *insuring* clause providing coverage for use of a vehicle and which defines use as including "the loading and unloading thereof" provides coverage on a restricted basis under the "coming to rest" theory or on an extended basis under the "complete operation" theory[2] This argument is not pertinent to the *exclusionary* clause before us, and we will not resolve it in this case. *See* 8 D. Blashfield, *Automobile Law & Prac.* § 317.9 (3d ed. 1966); Fox, *Coverage Under the Standard Loading and Unloading Clause*, 13 Syracuse L. Rev. 573 (1962); Magarick, *Loading and Unloading Under the Standard Automobile Policy*, 67 Dick. L. Rev. 257 (1963); Risjord, *Loading and Unloading*, 13 Vand. L. Rev. 903 (1960).

The present *exclusionary* clause is susceptible to more than one interpretation and could be understood by the average layman as indicating that "loading" ceases

[2]*Handley v. Oakley*, 10 Wn.2d 396, 116 P.2d 833 (1941), involved an ice cream truck parked near a baseball field on Labor Day. A boy getting ice cream from the truck was injured when struck by a foul ball. Liability under the policy was claimed on the basis that the clause involved provided coverage for the use of the truck including "the loading and unloading thereof" but was denied by the court since there was no causal connection between the accident and the "loading and unloading." There must be a causal connection between the use of the insured vehicle and the accident for which recovery is sought. *Pacific Auto. Ins. Co. v. Commercial Cas. Ins. Co.*, 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251 (1945).

when a truck has been filled and departed to make its delivery and "unloading" begins when transportation has ceased, the truck has arrived at its destination, and preparation for removal of the load from the vehicle has begun. It may be interpreted as not excluding coverage for negligence in loading the vehicle which results in an accident at a time other than during the actual loading or unloading process. Under the rules applicable to exclusionary clauses, coverage must follow. From another aspect, it could be argued in the extreme that the purpose of a "loader" is to perform loading; and, therefore, under the exclusionary clause, any accident occurring while it was performing its main purpose was excluded from coverage. The unacceptability of such an extreme result illumines our conclusion that the "complete operation" doctrine is not apropos to an exclusionary "loading and unloading" clause which must be read under the principles discussed.

In addition, when the policy is read as a whole, we concur that it does not exclude from coverage "mobile" equipment. The loader, which negligently loaded a truck under the plaintiff's theory, could have caused an accident not expected from the standpoint of the insured. This eventuality occurring from use of "mobile equipment" was not excluded from coverage.

We hold that the exclusionary clause did not remove coverage for an injury occurring away from a loading or unloading site but which was proximately caused by negligence in the use of the loader. We also hold that use of the loader in loading materials was not excluded from coverage under the plain terms of the policy.

The judgment is affirmed.

FARRIS and WILLIAMS, JJ., concur.

Petition for rehearing denied March 19, 1975.

Review granted by Supreme Court May 20, 1975.