[No. 2861-1. Division One. June 30, 1975.]

TRUCK INSURANCE EXCHANGE et al, *Respondents*, v. AETNA
CASUALTY & SURETY CO., et al, *Appellants*.

*Comfort, Dolack, Hansler, Hulscher, Rosenow & Bur-rows* and *Jack G. Rosenow*, for appellants.

*Davies, Pearson, Anderson, Gadbow, Hayes & Johnson, P.S.*, and *Ronald L. Coleman*, for respondents.

DENNEY, J.*—This case was tried on stipulated facts in a declaratory judgment action in which Truck Insurance Exchange sought a judgment that it was secondarily liable to Aetna Casualty & Surety Company for liability arising under the following circumstances.[1]

Mr. and Mrs. Donald Collier, insured by Aetna, delivered their automobile to Luther Costello, insured by Truck, to have Costello perform a tune-up. Mr. Collier left the vehicle with Costello at his place of business, an Enco Service

---

*Judge Charles R. Denney is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

[1] Plaintiff will be hereinafter referred to as Truck and the defendant as Aetna.

Station. About 4 hours later, while in the process of performing the tune-up, Costello started the engine of the vehicle after which it lurched forward striking Raleigh Smith.

The Aetna insuring provision agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury sustained by any person and injury to or destruction of property

> arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the Company shall defend any suit alleging such bodily injury or property damage . . .

By way of exclusions, the policy provides as follows:

> This policy does not apply under the Liability Coverage:
>
> . . .
>
> (g) to an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business, but this exclusion does not apply to the named Insured . . .

The policy defines "automobile business" as follows:

> "automobile business" means the business or occupation of selling, repairing, servicing, storing or parking automobiles;

The parties further stipulated that the sole issue submitted to the trial court was whether the exclusionary clause in the Aetna policy absolved Aetna from primary coverage.

The Truck policy provides:

> With respect to a . . . non-owned automobile, coverages . . . shall be excess insurance over any other valid and collectible insurance available to the insured.

The trial court ruled that under the stipulated facts the vehicle was not being "used" within the meaning of the exclusionary clause of the Aetna policy at the time of the accident. It held that "used" meant used for transportation, and therefore the clause did not absolve Aetna from potential liability. Aetna appeals.

Since both parties agree that Costello was engaged in the "automobile business" as defined in the policy, the resolution of this issue depends on whether under the stipulated facts Costello was "using" the vehicle.

Our Supreme Court has decided four cases involving automobile business exclusion provisions in an automobile liability insurance policy. *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 41, 491 P.2d 641 (1971); *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 416 P.2d 468 (1966); *Northwestern Mut. Ins. Co. v. Great Am. Ins. Co.*, 66 Wn.2d 762, 404 P.2d 995 (1965); *McCree v. Jenning*, 55 Wn.2d 725, 349 P.2d 1071 (1960). All of these cases dealt with policies excluding coverage "to the owned automobile while used in an automobile business." In these cases the Supreme Court held the word "used" pertains to the use of the automobile by the person engaged in the automobile business for his business purposes, as distinguished from his use of it in the course of repairing or servicing it. All of the cases also involved potential liability growing out of the operation of the vehicle upon the public highway or street.

The exclusionary clause in the instant case excludes coverage while the vehicle is used by any *person* while such person is employed or engaged in the automobile business. The change in the wording is significant in that the first type of exclusion applies when the insured automobile is used in the automobile business. The second type of exclusion applies to an insured automobile while used by a person (other than the named insured), while such person is employed or otherwise engaged in the automobile business.

None of the appellate courts of Washington have been called upon to interpret the language of the policy involved here, or language of similar import.

■ Certain well-accepted principles must be considered at the outset:

(1) Doubtful terms or phrases are interpreted against the insurer because an insurance policy is seldom a negotiated contract, but one which the insured must accept or

reject on a take-it-or-leave-it basis. The contract is prepared by the insurer and legitimate doubts on interpretation must be resolved in favor of the insured. *Aetna Ins. Co. v. Kent*, 12 Wn. App. 442, 530 P.2d 672 (1975).

(2) Exclusionary clauses are to be construed most strongly against the insurer. *Dickson v. United States Fidelity & Guar. Co.*, 77 Wn.2d 785, 789, 466 P.2d 515 (1970); *Aetna Ins. Co. v. Kent, supra.*

(3) The language of insurance policies is to be interpreted as it would be understood by the average man. *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974).

(4) On the other hand, courts cannot create ambiguity or doubt where the language of the policy is not susceptible of more than one interpretation. *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 491 P.2d 641 (1971).

■ The insuring clause of the policy under consideration insures against bodily injury and property damage arising out of the "ownership, maintenance or use" of the owned vehicle. The exclusionary clause does not include the word "maintenance." "Maintenance" and "use" are not synonymous terms. *Webster's Third New International Dictionary* (1969) defines "use" as:

> to put into action or service; have recourse to or enjoyment of . . .

"Maintenance," on the other hand, is defined as the labor of keeping something (as buildings or equipment) in a state of repair or efficiency. *Cf. Continental Ins. Co. v. Thompson*, 356 F. Supp. 560 (N.D. Okla. 1972); *Chase v. Dunbar*, 185 So. 2d 563 (La. App. 1966); *State Farm Mut. Auto. Ins. Co. v. Pan American Ins. Co.*, 437 S.W.2d 542 (Tex. 1969).

Mr. Costello's act in starting the motor while performing the tune-up was a part of the servicing or maintenance of the automobile. The stipulation does not suggest that the job was finished and Mr. Costello started the engine for the purpose of driving the vehicle to test it or deliver it to another location.

If an average man was told that Mr. Costello, the service station operator, was using the automobile, he would not conclude that Mr. Costello was repairing the vehicle, but would conclude that Mr. Costello was driving or using the automobile for transportation. An average man reading this policy would conclude that the automobile business exclusion applied to the use of the vehicle as a means of transportation, or for some other purpose related to transportation—not repairing.

A study of the cases reveals that exclusionary clauses have been worded more broadly, excluding "any person while employed in or otherwise engaged in duties in connection with an automobile business," or "any automobile or trailer while maintained or used by any person while such person is employed or otherwise engaged in the automobile business." *Humble Oil & Ref. Co. v. Lumbermens Mut. Cas. Co.* 490 S.W.2d 640 (Tex. Civ. App. 1973); *Northwestern Mut. Ins. Co. v. Travelers Ins. Co.*, 515 P.2d 1143 (Colo. App. 1973); *United States Fidelity & Guar. Co. v. Boyette*, 129 Ga. App. 843, 201 S.E.2d 660 (1973). If the policy in issue here had such a broad exclusion, we would have no difficulty in holding that the repairing of a vehicle fell within the exclusionary clause. If the insurer intended to exclude coverage for nonmotoring risks, the exclusionary clause should have contained clear, direct and simple language to indicate an intention to exclude all activities of a person engaged in the automobile business.

The purpose of the new exclusionary clause relating to the use of the automobile by persons engaged in the automobile business was to exclude from coverage risks occurring while the vehicle was being driven for any purpose by the garage owner or his employee, particularly where the vehicle was being driven in picking up or delivering the vehicle to the owner pursuant to the performance of the repair work. *Tindall Pontiac, Inc. v. Liberty Mut. Ins. Co.*, 441 S.W.2d 948 (Tex. Civ. App. 1969). In interpreting the new exclusion clause, courts are not concerned with the way the service station or garage used the vehicle, but only

whether it in fact was used at all. However, the new phrase does not expand the meaning of "use" or "used." An automobile liability policy is principally designed to cover motoring risks. R. Keeton, *Basic Text on Insurance Law* § 5.2(b) (1971).

There are many cases interpreting this automobile exclusionary clause.[2] However, all of the cases we have examined, except three hereinafter referred to, involved accidents occurring while the automobile was being ·operated on a highway or private property. Such cases, therefore, are not a precedent for this case.

Our research has revealed one case which appears to be factually similar. In *Gotreaux v. Travelers Ins. Co.*, 299 So. 2d 466 (La. App. 1974), a mechanic, while examining a battery cable, accidentally started the engine of the vehicle, thus causing it to move off a grease rack and injure an innocent third party. The policy had the same exclusion as the case at bench. The Louisiana court held that the policy did not cover the accident. However, the Louisiana court did not discuss the meaning of the word "use" or the distinction between "maintenance" and "using" as·those terms appeared in the insuring clause and the exclusion clause of the policy. We therefore do not choose to follow it.

In the case of *Truck Ins. Exch. v. Interinsurance Exch. of Auto. Club*, 33 Cal. App. 3d 984, 109 Cal. Rptr. 458 (1970), and the case of *Travelers Ins. Co. v. Northwestern Mut. Ins. Co.*, 27 Cal. App. 3d 959, 104 Cal. Rptr. 283 (1972), the California courts emphasize that the "use" provision in a policy should not transfer liability from the insurer of the more culpable person (the service station operator) to the innocent person (the owner of the vehicle). These opinions

---

[2] *See, e.g., Midwest Mut. Ins. Co. v. Federal Ins. Co.*, 289 So. 2d 760 (Fla. App. 1974); *Continental Nat'l Am. Group v. Allied Mut. Ins. Co.*, 95 Idaho 251, 506 P.2d 478 (1973); *Universal Underwriters Ins. Co. v. Farmers Ins. Exch.*, 17 Ill. App. 3d 386, 308 N.E.2d 288 (1974); *Deville v. United States Fidelity & Guar. Co.*, 258 So. 2d 694 (La. App. 1972); *Northern Assurance Co. of America v. Truck Ins. Exch.*, 151 Mont. 132, 439 P.2d 760 (1968); *Tindall Pontiac, Inc. v. Liberty Mut. Ins. Co.*, 441 S.W.2d 948 (Tex. Civ. App. 1969).

have some appeal as a matter of equity, but we are here dealing with a contract in which the owner's insurer has assumed duties and responsibilities which cannot be avoided because a service station or garage owner has a policy providing for secondary coverage. Indeed, it was conceded during oral argument that our approach to this case should be the same as though it involved a controversy between the insured and the insurance company.

Furthermore, in *Travelers Ins. Co. v. Northwestern Mut. Ins. Co., supra,* the California Court of Appeals held that a service station operator was not "using" a customer's automobile when he was jacking up the vehicle to change a tire under an owner's indemnity policy defining an insured as "any other person using such automobile with permission of the named insured." This decision appears to support Truck's position in this case. *Truck Ins. Exch. v. Interinsurance Exch. of Auto. Club, supra,* is clearly distinguishable because the policy defined "use" as including maintenance.

Our Supreme Court has heretofore given the word "use" a restricted meaning in exclusionary clauses. The exclusionary clause could have been made definite and certain as it relates to maintenance work by one engaged in the automobile business. The use of the words "maintenance" and "use" in the insuring clause, and the omission of "maintenance" in the exclusion clause, leads us to believe that the word "use" or "using" denotes employment of the vehicle as a means of transportation, or some other purpose incident to transportation.

Judgment affirmed.

CALLOW and ANDERSEN, JJ., concur.

Petition for rehearing denied August 26, 1975.

Review denied by Supreme Court October 21, 1975.