# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/06/2017, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jeffrey C. Gerish
Plunkett Cooney
Bloomfield Hills, Michigan

ATTORNEYS FOR APPELLEES –
FAYE L. KESSLER AND
WILLIAM J. KESSLER

Matthew J. Schad
George A. Budd, V
Schad & Schad, P.C.
New Albany, Indiana

ATTORNEYS FOR APPELLEE –
LORETTA LYNN JOHNSON, AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF WILLIAM
JOSEPH CHARLES

Cara W. Stigger
Kerstin Schuhmann
Kaufman & Stigger, PLLC
Louisville, Kentucky

# IN THE
# COURT OF APPEALS OF INDIANA

Grange Mutual Insurance
Company and Fieldstar, Inc.,

*Appellants-Defendants,*

v.

Faye L. Kessler and William J.
Kessler,

*Appellees-Plaintiffs,*

and

Loretta Lynn Johnson, as Personal
Representative of the Estate of
William Joseph Charles, *et al.*,

*Appellees-Defendants.*

September 6, 2017

Court of Appeals Case No.
22A01-1702-CT-376

Appeal from the Floyd Superior
Court

The Honorable Susan L. Orth,
Judge

Trial Court Cause No.
22D01-1501-CT-34

**Najam, Judge.**

# Statement of the Case

[1] Fieldstar, Inc. ("Fieldstar") and Grange Mutual Insurance Company ("Grange") appeal the trial court's denial of their joint motion for summary judgment. Fieldstar and Grange present a single issue for our review, which we restate as whether the trial court erred when it concluded that Fieldstar and Grange are not entitled to judgment as a matter of law.

[2] We affirm.

## Facts and Procedural History

[3] Fieldstar is an Indiana corporation that reads meters for utility companies. In 2013, Fieldstar operated a fleet of about fifty vehicles at numerous locations throughout Indiana. Fieldstar orally contracted with Rick Day to have Day do various jobs for Fieldstar. Day's work included performing vehicle repairs, which he did through his New Albany business, Rick's Auto Body. Day's relationship with Fieldstar also included transporting vehicles between Fieldstar's various Indiana locations and selling Fieldstar's vehicles when Fieldstar downsized its fleet. On some occasions, Day "would go pick . . . up" a vehicle that needed to be repaired and transport it to his shop to repair it. Appellants' App. Vol. 2 at 177.

[4] Usually, Fieldstar paid Day separately for each of those three types of work. Specifically, Day invoiced Fieldstar for repair work; Fieldstar paid Day a lump-sum for transporting vehicles between Fieldstar locations; and Fieldstar paid Day a commission for each vehicle he sold. However, Fieldstar sometimes paid Day "at once . . . for the repair and the $200 commission if he sold the vehicle" following the repair. *Id.* at 167.

[5] In January of 2013, Fieldstar needed trucks transported from its location in Richmond, which it was closing, to its location in Bloomington. In Bloomington, the trucks were to be "swap[ped]" out for cars that needed to be transported from Bloomington to Day's shop in New Albany. *Id.* at 182. And, in New Albany, the cars were "to be repaired" as needed "and sold." *Id.* at 166. Fieldstar paid for the fuel required to transport the vehicles; Fieldstar

"control[led]" when Day could pick the vehicles up at a given Fieldstar location; and Fieldstar "instruct[ed]" Day on where to transport the vehicles. *Id.* at 178. Fieldstar never required Day to provide any proof of insurance.

[6] On January 12, Fieldstar's owner, Norman Stroud, contacted Day about transporting the vehicles. Day then contacted Aaron Weddle, a friend of Day's son, and others to help Day transport the vehicles. Fieldstar paid Day a lump sum of $775 to transport the trucks and the cars. Day, in turn, paid Weddle a lump sum of $50.

[7] Weddle transported a truck from Richmond to Bloomington. In Bloomington, Weddle picked up a Chevrolet Aveo to transport to New Albany. En route, Weddle crossed the center line of U.S. 150 and struck, head on, a vehicle being driven by Faye Kessler. William Joseph Charles was a passenger in Kessler's vehicle. Prior to the collision, the Aveo had no known mechanical issues that required repair, and Stroud described the Aveo as "in service" for Fieldstar. *Id.* at 171.

[8] At the time of the collision, neither Day nor his business had "any kind of insurance." *Id.* at 178. However, Fieldstar had an automobile insurance policy with Grange. That policy stated as follows:

**SECTION II LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

\* \* \*

**1. Who is An Insured**

The following are "insureds":

\* \* \*

b. Anyone else while using with your permission a covered "auto" you own . . . except:

\* \* \*

(3) Someone using a covered "auto" *while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours*.

*Id.* at 91 (italics added).

[9] Following the collision, Kessler and her husband filed suit against Fieldstar, Grange, Rick's Auto Body, Weddle, and Auto-Owners Insurance Company, which had an insurance contract with the Kesslers. Loretta Lynn Johnson, as

the personal representative for the estate of Charles, was also joined as a party.[1]
Thereafter, Fieldstar and Grange (hereinafter collectively referred to as
"Fieldstar") jointly moved for summary judgment on the theory that Weddle
was not an "insured" under the policy. The Kesslers responded and cross-
moved for summary judgment.

[10] The trial court denied Fieldstar's motion for summary judgment but did not
rule on the Kesslers' motion. However, in its order denying summary judgment
for Fieldstar, the court stated that "the insurance policy in question provides
insurance coverage regarding the actions of Aaron Weddle on January 12,
2013." *Id.* at 245. The court entered its order as a final judgment, and this
appeal ensued.

## Discussion and Decision

[11] Fieldstar appeals the trial court's denial of its motion for summary judgment.
Our standard of review is clear:

> As we have recently reiterated, summary judgment imposes a
> heavy factual burden on the moving party—and a
> correspondingly light burden for the non-movant's response—
> because "Indiana consciously errs on the side of letting marginal
> cases proceed to trial on the merits, rather than risk short-
> circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000,
> 1004 (Ind. 2014). By definition, cases that hinge upon disputed
> facts are inappropriate for summary judgment, because

---

[1] It is not clear from the record on appeal the degree to which Kessler or Charles were injured in the car
accident or whether Charles' ensuing death was a result of injuries sustained in that accident.

"weighing [evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment." *Id.* at 1005-06.

By contrast, matters of contract interpretation are "particularly well-suited for de novo appellate review," because they "generally present [ ] questions purely of law." *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013). A contract may be construed on summary judgment if it "is not ambiguous or uncertain," or if "the contract ambiguity, if one exists, can be resolved without the aid of a factual determination." *Warrick County ex rel. Conner v. Hill*, 973 N.E.2d 1138, 1144 (Ind. Ct. App. 2012), *trans. denied*. The meaning of a contract is a question for the factfinder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992).

Moreover, our standard of review remains unchanged when, as here, the parties file cross-motions for summary judgment—we simply "consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015) (quoting *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012)).

*Mid-America Sound Corp. v. Ind. State Fair Comm'n (In re Ind. State Fair Litigation)*, 49 N.E.3d 545, 548 (Ind. 2016) (alterations, except the addition of the footnote, in the original).

[12] As an initial matter, we recognize that, in denying Fieldstar's motion for summary judgment, the trial court affirmatively declared that "the insurance policy in question provides insurance coverage regarding the actions of Aaron

Weddle on January 12, 2013." Appellants' App. Vol. 2 at 245. Nevertheless, it does not appear from the record that the trial court has entered an order on the Kesslers' cross-motion for summary judgment. Rather, insofar as we can discern, the trial court's statement in its order on Fieldstar's motion is gratuitous in that the court has not entered summary judgment for the Kesslers. Thus, we confine our review to the only issue raised on appeal, namely, whether Fieldstar is entitled to judgment as a matter of law. Nothing in this decision shall be construed as an opinion or comment on the Kesslers' cross-motion for summary judgment.

[13] On appeal here, the parties dispute the application of the policy to the designated evidence. Again, the policy excludes from coverage someone who uses a covered automobile "while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is yours." Appellants' App. Vol. 2 at 91. We have acknowledged that such exclusions apply when the use of the automobile is "pursuant to the performance of" or "to effectuate" a third party's independent business in one of the listed fields of work. *Am. Fam. Ins. Co. v. Nat'l Ins. Ass'n*, 577 N.E.2d 969, 972 (Ind. Ct. App. 1991) (quoting *Truck Ins. Exch. v. Aetna Cas. & Sur. Co.*, 538 P.2d 529, 532 (Wash. Ct. App. 1975)).

[14] The parties' arguments on appeal are based on selected readings of the designated evidence. Fieldstar asserts that Weddle is excluded by the policy because he was driving the Aveo as an employee for Day; that Day had an independent automobile repair business; and that Day was going to repair and

sell the Aveo pursuant to that business.[2]  On the other hand, the Kesslers, joined in a separate brief by Johnson, assert that Weddle is covered by the policy because he was merely transporting the Aveo and was not himself in the business of repairing or selling automobiles.  Alternatively, the Kesslers and Johnson assert that Fieldstar often hired Day—who then hired others, including Weddle—to transport vehicles from one Fieldstar location to another and that that work had nothing to do with Day's automobile repair business.

[15]  The designated evidence supports the conclusion that Fieldstar had an informal relationship with Day and hired Day to work in different capacities.  In one capacity, Day serviced or repaired Fieldstar's vehicles through Day's New Albany business, for which he invoiced Fieldstar.  In another capacity, Day transported Fieldstar's vehicles from one Fieldstar location to another, for which he was separately paid in lump sums by Fieldstar.  And in a third capacity, Day sold Fieldstar's vehicles, for which Day received a commission from each sale.  Thus, the central question on appeal is the capacity in which Day—through Weddle—acted pursuant to Fieldstar's January 12, 2013, request.

[16]  Contrary to Fieldstar's argument on appeal, the designated evidence creates a genuine issue of material fact regarding whether Weddle transported the Aveo in furtherance of Day's independent automobile repair business.  While a

---

[2]  Fieldstar does not allege that Weddle's act of transporting the Aveo from Bloomington to New Albany was within the policy's exclusions for "parking" or "storing" that vehicle.

reasonable fact finder could conclude that Fieldstar hired Day, and—contrary to the Kesslers' and Johnson's arguments on appeal—that Day then hired Weddle, to transport the Aveo from Fieldstar's Bloomington location to Day's New Albany shop location, there is no designated evidence that Day intended or expected to perform any repairs on the Aveo driven by Weddle. Rather, although Day and Stroud testified that Day often repaired vehicles before he sold them, Stroud expressly testified that there were no known mechanical problems with the Aveo driven by Weddle on January 12, 2013, that required repairs. Appellants' App. Vol. 2 at 171. He further expressly testified that the Aveo was "in service for Fieldstar" at the time of the accident. *Id.* Thus, a reasonable fact finder could conclude that Weddle's operation of the Aveo was not in furtherance of Day's independent automobile repair business.

[17]    But we agree with Fieldstar that the designated evidence supports the conclusion that Day intended to sell the Aveo. He testified that the vehicles were being transported to his shop in New Albany so that he could sell them from that location. And he hired Weddle to assist him in bringing the Aveo to New Albany to sell it.

[18]    Nonetheless, we disagree with Fieldstar that that evidence demonstrates that it is entitled to judgment as a matter of law. Fieldstar's policy exclusion does not apply when the "business of selling . . . is yours." Appellants' App. Vol. 2 at 91. And a reasonable fact finder could conclude from the designated evidence that Day's selling of the vehicles was not independent of Fieldstar's business. Rather, Fieldstar paid Day a commission on the sale of each vehicle. A

reasonable inference from that evidence is that Fieldstar retained the remainder of the sale proceeds. Further, Fieldstar retained control over the fuel costs for transporting the Aveo from Bloomington to New Albany; Fieldstar controlled when Day could pick up the Aveo to transport it; Fieldstar controlled where Day was permitted to drive the Aveo; and, again, Stroud admitted that the Aveo continued to be "in service" for Fieldstar on the date in question. *Id.* at 171.

[19] Accordingly, the designated evidence does not demonstrate that Fieldstar is entitled to judgment as a matter of law. Rather, one reasonable inference and conclusion from that evidence is that Fieldstar hired Day, who then hired Weddle, not "pursuant to the performance of" or "to effectuate" Day's repair business but, rather, pursuant to Fieldstar's business of selling its own vehicles. *See Am. Fam. Ins. Co.*, 577 N.E.2d at 972. As such, we cannot say that Weddle's use of the Aveo was excluded by the policy as a matter of law. Thus, we affirm the trial court's denial of Fieldstar's motion for summary judgment.

[20] Affirmed.

Kirsch, J., and Brown, J., concur.